[No. 2940. Decided October 18, 1898.]

LEWIS COUNTY, *Respondent*, v. A. F. GORDON *et ux., Appellants.*

DRAINAGE — VALIDITY OF CURATIVE ACT — STATUTES — TITLE AND SUBJECT MATTER — SPECIAL LEGISLATION —EMINENT DOMAIN—PUBLIC USE.

The legislature may properly authorize payment in condemnation proceedings of expenses incurred in prior proceedings under a statute which was declared unconstitutional after such expenditures were made.

The title of the act of March 19, 1895 (Laws 1895, p. 142), being "an act providing for the payment of expenses incurred in compliance with an act entitled 'an act to provide for the construction, repairing and protection of drains and ditches for agricultural, sanitary and domestic purposes, and to provide for the organization of drainage districts,'" is sufficiently comprehensive to cover the subject of assessments according to

benefits upon lands drained in order to pay for right of way through same.

An act providing "for the construction, repairing and protection of drains and ditches for agricultural, sanitary and domestic purposes, ana to provide for the organization of drainage districts," is general, and not special, legislation.

The construction of ditches for drainage of land otherwise useless for agricultural purposes is recognized as a public use.

Appeal from Superior Court, Lewis County.—Hon. HENRY S. ELLIOTT, Judge. Affirmed.

*Reynolds & Stewart,* and *C. H. Forney,* for appellants:

The act of March 19, 1895 (Laws, p. 142), is unconstitutional, because the same embraces more than one subject and its subject is not expressed in its title. One object of the act is to *collect* the cost of construction, etc., by an assessment upon the land owners. Not the slightest intimation of such an intention is expressed in the title. Indeed, all that the title expresses is that money is to be *expended,* not that any shall be *collected.* *Henderson v. London, etc., Ins. Co.,* 20 L. R. A. 827 (41 Am. St. Rep. 410). The title provides for payment of expenses already incurred; it does not apprise any one of the purpose of the act itself of incurring a further bonded indebtedness. The title refers only to past time, the act itself to future time as well. It has been often decided that when the title of a statute refers to time in the past or future, the act itself must conform to the time so expressed in the title. *Ryerson v. Utley,* 16 Mich. 269; *Shepherd v. Helmers,* 23 Kan. 504; *Supervisors v. Auditor General,* 68 Mich. 666; *Thomas v. Collins,* 24 N. W. 553; *Board v. Baker,* 80 Ind. 374; *People v. Parks,* 58 Cal. 640; *Percival v. Cowychee, etc., Irr. District,* 15 Wash. 480; Sutherland, Statutory Construction, §§ 87-103.

6—20 WASH.

The act of March 19, 1895, is unconstitutional because it is an attempt to deprive appellants of their property without due process of law. A statute which attempts to cure or ratify a void or unconstitutional act or proceeding, especially in tax or assessment proceedings, must undergo the test of this guaranty of "due process of law." Cooley, Constitutional Limitations (5th ed.), *p. 371 *et seq.; In re Cheesebrough,* 78 N. Y. 238; *In re Rhinelander,* 68 N. Y. 107; *People v. Haines,* 49 N. Y. 593; *Atchison, etc., R. R. Co. v. Maquilken,* 12 Kan. 301; *Spaulding v. Wesson,* 47 Pac. 249; *Mayor v. Hook,* 62 Md. 371; *Butler v. Supervisors,* 26 Mich. 22; *McDaniel v. Correll,* 19 Ill. 227 (68 Am. Dec. 587); *Bellevue v. Peacock,* 12 S. W. 1042 (25 Am. St. Rep. 552); *Reading v. Savage,* 12 Cent. Rep. 458.

The act of March 19, 1895, is unconstitutional, as being special legislation. When particular individuals (whether persons, cities, ditches, or any other subject matter of legislation) can be designated with certainty as being affected by the law, and all other individuals are necessarily excluded from its operation, then such law is special. It matters not whether the number of individuals be few or many. *State v. Mitchell,* 31 Ohio St. 607; *City of Topeka v. Gillett,* 4 Pac. 800; *State ex rel. Turner v. Bell,* 64 N. W. 846; *State v. Judges,* 21 Ohio St. 1; *Town of Denver v. Spokane Falls,* 7 Wash. 232.

Before private property can be taken for a use alleged to be public, it must be affirmatively shown that the contemplated use is one demanded by the necessities of the public at large. It must be shown that the public at large, as distinguished from mere individuals, will be benefited. Cooley, Constitutional Limitations (6th ed.), p. 651 *et seq.* The public use implies a possession, occupation and enjoyment of land by the public at large, or by public

agencies.    *Bloodgood v. Mohawk & H. R. R. R. Co.,* 31
Am. Dec. 355; *Donnelly v. Decker,* 58 Wis. 461 (46 Am.
Rep. 637); *In re Theresa Drainage District,* 63 N. W.
288; *Tidewater Co. v. Coster,* 90 Am. Dec. 634; *Patter-
son v. Baumer,* 43 Iowa, 477; *Reeves v. Treasurer of
Wood County,* 8 Ohio St. 333.

The public use which will warrant the taking of private
property for a ditch, even with compensation, must be
demanded by a necessity to preserve or promote the public
health.    *Anderson v. Kerns Draining Co.,* 77 Am. Dec.
63, and notes; Lewis, Eminent Domain, §§ 185, 186, and
cases cited; *Hagar v. Reclamation District,* 111 U. S. 701
(28 L. ed. 569); *Hagar v. Supervisors of Yolo County,*
47 Cal. 222; *O'Reiley v. Kankakee Valley Draining Co.,*
32 Ind. 169; *Zigler v. Menges,* 16 Am. St. Rep. 359;
*Jenal v. Green Island Draining Co.,* 12 Neb. 163; *In re
Ryers,* 72 N. Y. 1 (28 Am. Rep. 88); *Tillman v. Kircher,*
64 Ind. 104; *Anderson v. Baker,* 98 Ind. 587; *Patterson
v. Baumer,* 43 Iowa, 477; *Hatch v. Pottawattamie Coun-
ty,* 43 Iowa, 442; *Norfleet v. Cromwell,* 70 N. C. 634 (16
Am. Rep. 787); *Pool v. Trexler,* 76 N. C. 297; *Winslow
v. Winslow,* 95 N. C. 24; *McQuillen v. Hatton,* 42 Ohio
St. 202; *Seeley v. Sebastian,* 4 Ore. 25.

*George Dysart,* and *W. W. & M. A. Langhorne,* for re-
spondent:

The act of March 19, 1895, is a legislative recognition
of a *moral obligation* to pay proper compensation for lands
taken and expenses incurred in the construction of local
improvements, under the void act of March 19, 1890, and
as such should be sustained.    Although an act be uncon-
stitutional, the legislature may, by a subsequent act, direct
the expenses incurred by such legislation to be paid.    *Peo-
ple v. Bradley,* 64 Barb. 229; *In re Amberson Ave.,* 179

Pa. St. 634; *Ritchie v. Franklin County,* 22 Wall. 67 (22 L. ed. 825); *State ex rel. Hemen v. Ballard,* 16 Wash. 418; *Town of Guilford v. Board,* 13 N. Y. 143.

The generality of a title is no objection to it, so long as it is not made a cover to legislation incongruous in itself, and which by no fair intendment can be considered as having a necessary or proper connection. The legislature must determine for itself how broad and comprehensive shall be the object of a statute, and how much particularity shall be expended in the title defining it. Cooley, Constitutional Limitations (6th ed.), p. 178; *Board of Directors v. Peterson,* 4 Wash. 150; *Lancey v. King County,* 15 Wash. 10 (34 L. R. A. 817); *People v. San Francisco,* 36 Cal. 595; *Hall v. Slabaugh,* 37 N. W. 545; *Bourland v. Hildreth,* 26 Cal. 180; *Montclair v. Ramsdell,* 107 U. S. 155 (27 L. ed. 431); *Commissioners of King County v. Davis,* 1 Wash. 290.

The act of March 19, 1895, is not special legislation. " The number of persons upon whom the law shall have any direct effect may be very few, by reason of the subject to which it relates; but it must operate equally and uniformly upon all brought within the relations and circumstances for which it provides." Sutherland, Statutory Construction, § 124; *Bell v. Maish,* 36 N. E. 358; *Brown v. Vandyke,* 55 Am. Dec. 252; *Holmes & B. Furniture Co. v. Hedges,* 13 Wash. 697; *North River Boom Co. v. Smith,* 15 Wash. 138; *Pullman v. Hungate,* 8 Wash. 520; *Ex parte Koser,* 60 Cal. 177; *Ex parte Lichtenstein,* 67 Cal. 359 (56 Am. Rep. 713).

The line that separates a public use from uses that are private is indeed a hard one to define. Cooley, Constitutional Limitations (6th ed.), 654 *et seq.*; 7 Lawson, Rights, Rem. & Prac., § 3885. " It is not necessary that the public at large shall be benefited, but only that part of

the public affected by want of proper drainage or by the improvement to be made." *Chesbrough v. Commissioners,* 37 Ohio St. 508; *Wurts v. Hoagland,* 114 U. S. 606 (29 L. ed. 229); *Gilmer v. Lime Point,* 18 Cal. 229; *Talbot v. Hudson,* 16 Gray, 417; *Ellinghouse v. Taylor,* 48 Pac. 757.  The reclamation of these lands will add greatly to the productive area of land, increase the taxable wealth of the state, promote immigration, conduce to the public health and welfare.  These objects constitute a public use.  *Butte, A. & P. Ry. Co. v. Montana U. Ry. Co.,* 41 Pac. 232 (31 L. R. A. 298, 50 Am. St. Rep. 508); *Lindsay Irrigation Co. v. Mehrtens,* 32 Pac. 802; *Oury v. Goodwin,* 26 Pac. 376; *Heick v. Voight,* 110 Ind. 279; *In re Central Irr. District,* 49 Pac. 354; *Hand G. M. Co. v. Parker,* 59 Ga. 419; *Fallbrook Irr. District v. Bradley,* 164 U. S. 112 (41 L. ed. 369); *Dayton G. & S. M. Co. v. Seawell,* 11 Nev. 394.

The opinion of the court was delivered by

REAVIS, J.—Action by respondent to condemn a right of way through appellants' premises for a ditch, which had previously been constructed under the provisions of an act " To provide for the construction, repairing and protection of drains and ditches for agricultural, sanitary and domestic purposes, and to provide for the organization of drainage districts," approved March 19, 1890. Laws 1889-90, p. 652.  The proceedings to condemn were taken under the act approved March 19, 1895 (Laws 1895, p. 142, Bal. Code, §§ 3755-3762), entitled, "An act providing for the payment of expenses incurred in compliance with an act entitled, 'An act to provide for the construction, repairing and protection of drains and ditches for agricultural, sanitary and domestic purposes, and to provide for the organization of drainage dis-

tricts.' ". A trial was had without the intervention of a jury, and the facts found by the court.

The court found that on the 12th of August, 1890, a petition was filed in writing with the board of county commissioners of the respondent, in accordance with § 4 of the act approved March 19, 1890, praying for the construction of a public ditch along the route designated, and at the same time petitioner filed his bond required by § 5 of said act, which bond was duly approved. Thereafter the county commissioners, under the provisions of the act, undertook the construction of the ditch, and ordered the same surveyed by the county surveyor, in conformity to the provisions of the act; that the surveyor filed his report, showing the location and survey of the ditch, with the estimates of the cost of location and construction; that notices were given to the owners of the land over which the survey was made and the ditch located; that contracts were made for the construction of the ditch under the provisions of said act, and that the ditch was completed about the 8th day of July, 1894; that all the owners of the land had actual knowledge of the entry upon said lands and the construction of the ditch, during the progress of the work; that the commissioners, at the request of A. F. Gordon, one of the appellants, and under his instructions, placed a frame culvert over the ditch at the mouth of the same and covered it, at an additional expense of $380; that, subsequent to the construction of the ditch, the commissioners, under the provisions of the said act of 1890, assessed the lands benefited as provided in the act, and that none of the assessments were ever paid; that the cost of the construction and location of the ditch was $7,584.50. The court found that the route selected by the commissioners for the ditch was the natural and most practicable route for the drainage of the lands, and that

all of the lands over which the ditch was constructed were low, wet and swamp lands, except lots 3 and 4 of appellants, and that the ditch afforded ample facilities for the proper drainage of the lands; that all of said lands were agricultural lands and, with proper drainage, valuable for agricultural purposes.   The court assessed the damages for right of way through appellants' premises, irrespective of the benefits from the construction of said drainage ditch, and found as a conclusion of law that respondent was entitled to condemn the strip of land through appellants' premises, and that the route selected for the ditch was practicable; that necessity exists for condemnation of the right of way through appellants' premises; that the construction of the ditch is conducive to the public health, convenience and welfare.

Appellants have objected to several material findings of fact made by the superior court as not sustained by the testimony; but, after an examination of the evidence from the statement of facts, we are not disposed to disturb the findings.   The compliance with the law of 1890 was substantially correct.   The opportunity for appellants to be heard before the ditch was ordered constructed was given as required in the drainage law of 1890, and appellants also requested certain particular work to be done in connection with the ditch, which request was complied with by the county commissioners.   No assessment was collected for the construction of the ditch, including the right of way, because the act of 1890, *supra,* was adjudged unconstitutional by this court in the case of *Skagit County v. Stiles,* 10 Wash. 388 (39 Pac. 116), following *Askam v. King County,* 9 Wash. 1 (36 Pac. 1097).   The latter case involved the right of the county to condemn lands for right of way for a ditch for drainage purposes, and it was said that, under the provisions of the law, there was no

attempt to have the damages incident to taking of private property assessed and compensated for in the first instance; and, if the property owner did not appear and himself take the initiative, the law provides that his property can be taken without there being an assessment of damages, and without the payment of any compensation whatever, and therefore was in conflict with § 16 of article 1 of the constitution. In *Skagit County v. Stiles, supra,* it was further adjudged that the whole act was unconstitutional, because of the failure to provide for compensation for land taken for right of way. By the law of 1895, *supra,* the legislature provided for the payment of expenses incurred in substantial compliance with the act of 1890. It is, however, urged by counsel for appellants, that the legislature could not validate the unconstitutional law of 1890 and authorize the payment of expenses incurred thereunder; and it is maintained that, the law of 1890 having been adjudged unconstitutional, it was as if no law had been enacted, and that no subsequent legislation could give such invalid law any validity. But the legislature in 1895 did not attempt to give virtue to the act of 1890. It did, however, recognize a moral obligation to pay expenses incurred under the law of 1890; and this it might do, and, though an act of the legislature may be unconstitutional, yet subsequent legislation may properly direct expenditures incurred under such legislation to be paid. 3 Am. & Eng. Enc. Law, p. 678; *People v. Bradley,* 64 Barb. 228; *Ritchie v. Franklin County,* 22 Wall. 67 (22 L. ed. 825).

The town of Ballard was incorporated in this state under act of February 2, 1888, which law was held unconstitutional in *Territory v. Stewart,* 1 Wash. 98 (23 Pac. 405). Afterwards the town attempted to reincorporate under act of March 27, 1890. The latter act was also

held void in *Town of Denver v. Spokane Falls,* 7 Wash. 226 (34 Pac. 926). After the attempt to reincorporate was made, proceedings were taken for the improvement of a large number of streets in the city, and assessments were levied to pay the expenses. The assessments were not paid, and street grade warrants were issued by the city to contractors in payment of labor and material. These warrants were presented, but not paid; and on March 9, 1893, the legislature legalized and validated the reincorporation of the towns and cities under the act of March 9, 1890. It was ruled in *State ex rel. Hemen v. Ballard,* 16 Wash. 418 (47 Pac. 970), that contracts for local improvements in towns illegally incorporated under the acts of 1888 and 1890 are expressly validated by laws of 1893, p. 183 (Bal. Code, § 705), providing for the legalization of towns which have attempted to incorporate or reincorporate, and a reassessment for such improvements is authorized by Laws 1893, p. 226 (Bal. Code, §§ 1139-1149). See, also, *Pullman v. Hungate,* 8 Wash. 519 (36 Pac. 483) ; *State ex rel. Traders' National Bank v. Winter,* 15 Wash. 407 (46 Pac. 644) ; *United States v. Realty Co.,* 163 U. S. 427 (16 Sup. Ct. 1120).

The objection, that the title to the law of 1895 is insufficient to provide for an assessment according to benefits upon lands drained for the payment of right of way, is not tenable, under the decisions in this state. The law of 1895 is not special legislation. It applies alike to all lands and persons similarly situated, and where action is taken under its provisions to drain lands for the purposes mentioned in the act. Neither is the law open to the objection that private property is taken for private use. The construction of ditches for drainage of land otherwise useless for agricultural purposes is recognized as a public use. Cooley, Constitutional Limitations (5th ed.), p. 659.

It is not necessary that the public at large shall be bene-
fited, but only that part of the public affected by want
of proper drainage or by the improvement to be made.
*Chesbrough v. Commissioners,* 37 O. St. 508; Lewis,
Eminent Domain, § 185; *Wurts v. Hoagland,* 114 U. S.
606 (5 Sup. Ct. 1086); *Ellinghouse v. Taylor,* 19 Mont.
462 (48 Pac. 757); *Lindsay Irrigation Co. v. Mehrtens,*
97 Cal. 676 (32 Pac. 802); *In re Central Irrigation Dis-
trict,* 117 Cal. 382 (49 Pac. 359).

Cooley on Taxation (2d ed.), p. 616, observes:

" The expense of constructing drains in order to relieve
swamps, marshes and other low lands  .   .   .   is usual-
ly provided for by special assessments.  .   .   .   But
where any considerable tract of land, owned by different
persons, is in a condition precluding cultivation, by reason
of excessive moisture which drains would relieve, it may
well be said that the public have such an interest in the
improvement, and the consequent advancement of the gen-
eral interest of the locality, as will justify the levy of
assessments upon the owners for drainage purposes.  Such
a case would seem to stand upon the same solid ground
with assessments for levee purposes, which have for their
object to protect lands from falling into a like condition
of uselessness."

See, also, *Hagar v. Supervisors,* 47 Cal. 222.

As observed by some of the authorities cited, it is some-
times difficult to draw a precise line of distinction between
the public and private objects of improvements of the
nature under consideration here.   It is true, the owner
of land may use it and cultivate it as he desires, so long
as he does not injuriously affect the rights of others.   But
the public also has an interest beyond that of the mere
sanitary condition of land, and founded upon other and
different principles than the controlling or abatement of
nuisances, where any considerable number of persons are

concerned, or tract of land is useless, and improvements. may be made commensurate to the benefits received, and the land itself may be taxed for such benefits.     The principle requires careful application, but many illustrations. of its existence can be found sustained by the highest authority.

But the condemnation of right of way through the premises of appellants being for a public use, there only remains a consideration of the provision made for the payment for the injury to the land taken.     The provisions made for such .payment in the act under consideration here seem to be fully met and approved in the case of *Hansen v. Hammer,* 15 Wash. 315 (46 Pac. 332).     In that case the act for establishing diking districts (Laws. 1895, p. 304, Bal. Code, §§ 3673-3714) was construed, and the court said:

" We are not disposed to hold the act unconstitutional. .   .   .     While the cost is to be paid for by an assessment upon the property benefited, authority can be given by the legislature   .   .   .     to collect the assessments. in advance of the commencement of actual construction. .   .   .     While the owners of land to be taken for a right of way have a right to compensation before they are dispossessed, whether by a municipal or any other corporation, and the money therefor must be provided in some manner for all such owners not waiving advanced payment, still all the preliminaries, including condemnation proceedings, to ascertain the cost and everything in advance of the commencement of actual construction, can be carried on and completed before it is necessary to take the land, and the decree of condemnation can provide for payment before the owner is dispossessed, and for a forfeiture of the right if not made within a reasonable time."

The judgment of the superior court is affirmed.

SCOTT, C. J. and ANDERS and GORDON, JJ., concur.

DUNBAR, J., dissents.