[No. 3942.   Decided March 21, 1902.]

THE STATE OF WASHINGTON *on the Relation of N. H. Latimer, Respondent,* v. W. J. HENRY *et al., as Commissioners of Skagit County, Appellants.*

STATUTES — CONSTITUTIONALITY OF CURATIVE ACT.

It is within the power of the legislature to enact a statute authorizing the making of an assessment to cover the cost of work done on a public improvement under a void law.

DAMAGES — CONSTITUTIONAL  LAW — ASSESSMENT  AGAINST  SCHOOL LANDS.

That part of § 8 of the act of 1895 (Bal. Code, § 3762), concerning the payment of benefits for drainage ditches which provides that "when an assessment shall be apportioned against any school lands of the state, the county shall pay the same out of its general fund and have a lien on the proceeds of the sale of such lands" for its reimbursement, is unconstitutional on the ground that funds raised by taxation for general county purposes cannot be applied to the payment of assessments for local improvements, and on the further ground that the proceeds of the sales of school lands cannot be diverted from the permanent and irreducible common school fund.

SAME.

Although school lands benefited by the construction of a ditch cannot be rendered liable for the payment thereof, such benefits cannot be charged up against private property, and, in such cases, the assessment should be levied against the school lands, leaving it to the state to provide therefor by proper legislation.

SAME — INVALIDITY OF PORTION OF ACT — EFFECT.

An act providing for the construction of ditches for agricultural, sanitary, and domestic purposes is not unconstitutional by reason of the invalidity of a portion of the act providing for the assessment of school lands to help pay therefor, when the act, after the exclusion of such void portion, is sufficient in itself to constitute a complete law, capable of being executed without any dependence upon the rejected portion.

SAME — DUE PROCESS OF LAW.

The act of 1895 (Bal. Code, §§ 3755-3762), providing for the payment of expenses theretofore incurred in the construction of ditches is not subject to the objection that it deprives the landowner of property without due process of law, because no provision is made in the act in positive terms for contesting the assessments imposed by the county commissioners, since the act itself provides that in a suit to enforce the lien the property owner might set up any matter respecting the amount or legality of the assessment, and in addition an ample remedy for reviewing the proceedings of the board of commissioners is provided by writ of certiorari under the general laws of the state.

SAME — COUNTY COMMISSIONERS — PRESUMPTIONS AS TO IMPARTIALITY.

The fact that county commissioners are to disburse moneys in a ditch fund under their control in the way pointed out by law, on the happening of certain events determined by them judicially would raise no presumption that they would not be an impartial tribunal.

Appeal from Superior Court, Skagit County.—Hon. JESSE P. HOUSER, Judge.    Modified.

*M. P. Hurd, Henry McBride, Thomas Smith* and *E. C. Million,* for appellants.

*Frank Quinby* and *Kerr & McCord,* for respondent.

The opinion of the court was delivered by

WHITE, J.—This appeal is prosecuted from a judgment awarding mandamus in favor of the respondent, requiring appellants, as commissioners of Skagit county, to proceed to make an assessment by the apportionment of the cost of the construction of a drainage system, known as the "Olympia Marsh Ditch," against various tracts of land claimed to be benefited by such improvement, excluding therefrom certain school lands. In the year 1891 the commissioners of Skagit county, acting under the law of March, 1890 (Laws 1889-90, p. 652), caused to be constructed a system of drainage, on what is known as the "Olympia Marsh," and, to pay for the same, caused to be issued warrants upon the county auditor out of a fund known as "Olympia Marsh Ditch Fund," which was a receptacle for moneys to be collected from the assessments to be levied upon land benefited by such system of drainage. The law having been declared void by this court, *Skagit County v. Stiles,* 10 Wash. 388 (39 Pac. 116), and the assessment invalid, as a consequence there was not sufficient money ever paid into this fund to redeem the warrants, and the legislature of 1895 passed an act in the nature of remedial legislation (Session Laws 1895, p. 142), which provides for a reassessment of the property in such cases. Under the provisions of this last act the county commissioners have caused to be condemned the right of way for the ditch in question, and proceeded to ascertain the aggregate cost of the ditch and apportion the cost to the lands claimed to be benefited, the amount as so apportioned being $15,184.98, and fixed a day for the hearing of said apportionment, gave notice to land owners, and, upon the hearing, and upon the objection of the land owners, the commissioners refused to proceed further on

the ground that the law was unconstitutional and void,
and that they had no jurisdiction.   In order to pay for
the right of way of the land condemned, the commis-
sioners had issued bonds, as provided for in the law of
1895, to the amount of $1,600, and sold the same to the re-
spondent herein, and as the owner of such bonds, and also
as the holder of a warrant for $500 issued October 6,
1891, on account of the original construction of the ditch,
respondent brought this action in mandamus to compel
the appellants, as county commissioners, to proceed to
make a reassessment in accordance with the law of 1895.
The trial court ordered the reassessment made, excluding
all school lands, and it is from this decision that appel-
lants bring this action here for review.

The answer of the county commissioners to the affi-
davit for the writ is as follows:

"That of the lands included within township 35 north,
and range 3 and 4 east, in Skagit county, Washington,
and referred to in plaintiff's affidavit, a part thereof con-
sists of state or school lands, being in section 36 and
township 35 north, of range 3 east, and section 16 in town-
ship 35 north, of range 4 east, all of which said school
lands are still owned and controlled by the state of Wash-
ington, and that the tax so assessed and levied thereon will
amount in the aggregate to $2,500; and, if these defend-
ants are compelled to proceed under the law of 1895 to
make a complete and perfect assessment for the payment
of the indebtedness referred to in plaintiff's affidavit, the
said county of Skagit will be compelled to advance, for
the use and benefit of the state of Washington, and with-
out any benefit to the said county, the said sum of $2,-
500, and that by so doing the said county of Skagit will
be deprived of property without having received any bene-
fit therefor or without due process of law.   This defend-
ant alleges that the improvements as heretofore made or
as contemplated are of no benefit to the said county of

Skagit at large, and these defendants allege that such assessment as to such county would be depriving the said county (of property) without due process of law, and contrary to the provisions of the constitution of the state of Washington and the fourteenth amendment to the constitution of the United States, the benefits of which provisions are hereby especially set up and claimed by these defendants both for themselves and said county of Skagit."

The defendants further allege:

"That the statute upon which these proceedings are based is unconstitutional and void, and in conflict with the fourteenth amendment to the constitution of the United States, in that it deprives the owners of the land described in said affidavit of their property without due process of law, and these defendants for themselves and for the owners of said property hereby set up and claim the benefit of the provisions of the said fourteenth amendment to said constitution."

Appellants in their brief contend that the action of the trial court was erroneous and should be reversed for the following reasons, towit: (1) That the entire act of 1895 is unconstitutional and void and in conflict not only with the constitution of the state of Washington, but with the fourteenth amendment to the constitution of the United States; (2) that, conceding the law of 1895 to be otherwise valid, it is void as to the county because it requires the county to advance and pay any assessment upon school lands; (3) that the act of 1895 is invalid because it fails to provide for an impartial tribunal to determine the benefits and make the assessments; (4) that the said law is invalid because it requires that assessments shall be made to an amount equal to the outstanding warrants, regardless of whether the cost exceeds the benefits; (5) that the judgment is erroneous in that it requires that all

school lands shall be excluded from assessment. The appellants, for one reason, urge that the act is unconstitutional because it attempts to breathe life into the acts of the county commissioners which were had and done under a void law, and, as a void law confers no rights, rights cannot be built up under it. This very point was suggested in *Lewis County v. Gordon,* 20 Wash. 80 (54 Pac. 779), and decided adversely to the contention of the appellants. Touching the identical ditch in controversy in this action, where, under the first section of the act of 1895, a suit was instituted to condemn a right of way, this court held in *Skagit County v. McLean,* 20 Wash. 92 (54 Pac. 781), that the act of 1895 was constitutional. In *Lewis County v. Gordon, supra,* it was also held that the legislature might properly authorize payment in condemnation proceedings of expenses incurred under the act of 1890, and that the construction of ditches for drainage of land otherwise useless for agricultural purposes was a public use. Some of the questions now presented as to the constitutionality of the act are for the first time brought to our attention under this appeal.

We think, because the state has an interest in the health of its citizens, that the legislature had authority to provide that school lands benefited should be taken into consideration in apportioning the cost of the improvements; that the portion of the cost appertaining to the school land benefited should not be assessed against private property benefited. So far as the act in question seeks to accomplish these objects it is not unconstitutional. *McLean County v. Bloomington,* 106 Ill. 209; *Hassan v. Rochester,* 67 N. Y. 528.

We do not mean to hold that funds derived from the sale of school lands can be appropriated to any other use, or that school lands can be assessed and sold to pay for

local improvements. We do not think this can be done. The state holds these lands in trust for a particular purpose. Under the constitution the proceeds of the sale of these lands constitute a portion of the permanent and irreducible common school fund. This fund cannot be devoted to any other purpose. The lands cannot be sold to pay for local improvements, for thereby they might be totally absorbed and diverted from such fund; for, while it may be true in theory, it is not always true in fact, that lands exposed to sale for the payment of local improvement assessments will bring enough to cover the enhanced value of the land. *Edgerton v. Huntington School Township,* 126 Ind. 261 (26 N. E. 156); *People ex rel. Little v. Trustees of School Township,* 118 Ill. 52 (7 N. E. 262).

The question before us relates purely to the right of the state to apportion a public burden upon public in common with private property in proportion to the benefits conferred upon that property. While special assessments against private property may be collected from the property itself, the act under consideration does not attempt to apply this rule to public property. It provides a different method as to such property for the collection of the assessment. The method provided may be unconstitutional, but it does not follow from that fact that the entire act is unconstitutional. The state has received a benefit conducive to the health of its inhabitants from the improvement, and it is to be presumed that, after it has enacted that the burden shall rest alike upon private and public property benefited, it will provide a lawful way to pay its share. This is a subject for further legislation if the provision made for the payment of the state's proportion is invalid. As was said by the supreme court of New York, in the case of *Hassan v. Rochester, supra:*

"Although the state cannot be made a party to an action to enforce such a claim and be sued in its sovereign capacity it may be assumed that the state will provide means for the liquidation of assessments imposed by virtue of laws enacted by its legislature, and that as has been frequently done heretofore, appropriations will be made for that purpose. As we have seen, the state has practically recognized its liability to municipal corporations for assessments imposed, and those who are to be benefited by the assessments of its lands have, at least, a right to the advantage which may be derived from the probable and perhaps certain payment of the same. We have been referred to some authorities bearing upon the subject of the liability of the state for assessments for its lands, but none of them, we think, conflict with the principle that the state, through its legislative power, may authorize its lands to be assessed for local improvements."

The legislature has no power to impose taxes upon counties, cities, towns, or other municipal corporations, or upon the inhabitants or property thereof for county, city, town, or other municipal purposes, but may by general law vest in the corporate authorities thereof power to assess and collect taxes for such purposes. § 12, art. 11, of the constitution. This section only authorizes a general law for the collection of taxes by the corporate authorities of the county for general county purposes.

"No tax shall be levied except in pursuance of law; and every law imposing a tax shall state distinctly the object of the same, *to which only it shall be applied.*" § 5, art. 7.

From this last section of the constitution it seems too plain for argument that the funds of the county raised by taxation for general county purposes cannot be applied to the payment of assessment of costs against school lands improved in a local assessment district. Such application is not for a county purpose. On this ground, as well as for the reason that the proceeds of the sale of school lands can-

not be directly or indirectly diverted from the permanent and irreducible common school fund, we hold that part of § 8 of the act of 1895 which provides that the county shall pay the assessment apportioned against school lands out of its general fund, and have a lien on the proceeds of the sale of such lands from which it is to be reimbursed, unconstitutional and void.

Notwithstanding the provision of the act requiring the county to pay the assessment against school lands is unconstitutional, the rest of the act can be upheld. No doubt many districts have proceeded under this act, and, for the improvements, bonds and warrants to a large amount are outstanding. These obligations should not be repudiated unless the rules of construction imperatively require us to hold the entire act unconstitutional. It is important to the health of the inhabitants of the state that marsh and swamp lands be drained. In an early case, in passing upon the question of the formation of irrigation districts under the irrigation act of 1890, we said:

"When any question involving the constitutionality of an act of the legislature is presented to a court for adjudication, it calls for the utmost care and consideration of such court in determining the same, and if this is true in an ordinary case, it is much more so in the one at bar, which presents a question of public policy of the gravest nature; one in fact upon which depends to a great extent the prosperity of a very considerable portion of the inhabitants of the state." *Board of Directors v. Peterson,* 4 Wash. 147 (29 Pac. 995).

The same language is applicable to the case now under consideration. The rule for determining whether the act is void as a whole, or only in part, is that, if the invalid portions can be separated from the rest, and if, after their excision, there remains a complete, intelligible, and valid statute capable of being executed, and conform-

ing to the general purpose and intent of the legislature as shown in the act, it will not be adjudged unconstitutional *in toto*, but sustained to that extent. It is necessary that the remaining portions be sufficient in themselves to constitute a complete, intelligible law, and one capable of being executed, and that they should be so independent of the rejected portions that it may be fairly presumed that the legislature would have enacted the restricted statute by itself without making the rejected portions a condition to the passage of the whole act. Cooley, Constitutional Limitations (6th ed.), p. 210; Black, Interpretation of Laws, p. 96.

Have we a right to presume that the legislature would not have enacted the law in question without inserting the provision as to payment by the county of the costs apportioned to the school land? We think not. The improvement of land was not the principal object. As declared in the title, the ditches contemplated were for agricultural, *sanitary*, and domestic purposes. The health of the people was one of the principal considerations for the passage of the act. This is a matter of the very highest importance to the state. We are not warranted in believing, under these circumstances, that the legislature would not have passed the act with the omission of the unconstitutional portion. We therefore conclude that the remainder of the act at least is constitutional, unless subject to some other and fatal objection.

The appellants claim that the board of county commissioners is not an impartial tribunal to determine the benefits and make the assessments, because the act provides that if any one makes an exception to the apportionment and the board sustains the exception, the costs of the hearing thereon shall be paid out of the county treasury. From

what we have heretofore said, it is clear that no portion of the general funds of the county can be applied to the payment of such costs, and such costs can only be paid out of the ditch fund authorized by the act. It is true that under the act the commissioners have the disbursement of this fund, but the presumption is that they will discharge their duties in a lawful manner. The mere fact that they are to disburse the funds under their control in a way pointed out by the law, on the happening of certain events determined by them judicially, is not sufficient to make it manifest that they are not an impartial tribunal. Costs to be assessed for local improvements cannot exceed the benefits conferred. Section 3 of the act of 1895, in effect, so provides. It requires the county commissioners to ascertain the aggregate cost of the ditch and apportion the same to each lot, tract of land, etc., according to benefits resulting from the improvements, *not exceeding the amount of said benefits.* Under this provision the cost may be less or equal to the benefits. For all portions of the cost exceeding the benefits, no assessment can be made on the property benefited. The act provides for notice to land owners of the apportionment of such assessments, provides for an opportunity to be heard before the board of commissioners, and provides that if, on such hearing, the commissioners find that the apportionment is unfair and unjust and ought not to be confirmed, they shall so order and amend it as to make it fair and just in proportion to the benefits. The only objection made to the assessment was that set forth in the answer. No complaint is made as to the fairness of the apportionment. That question is not now before us. It is nowhere suggested in the answer that the proposed improvement is not of a public nature. The affidavit for the writ distinctly

alleges that legal proceedings for the purpose of acquiring title to the lands occupied by and necessary to the construction and maintenance of the ditch, by proceedings in eminent domain, were instituted and maintained for the condemnation of a right of way for said ditch in the superior court of Skagit county in the case of *Skagit County v. McLean,* 20 Wash. 92 (54 Pac. 781), and the right of way necessary for the construction of said ditch was condemned, etc. From this we must presume that there was an adjudication by the court that the improvement was for a public use, and that all persons interested in this question had an opportunity to be heard, or can be heard, in the manner hereinafter indicated. That question is not now before us.

But it is claimed that the act violates the fourteenth amendment to the constitution of the United States, inasmuch as it deprives the owners of the land benefited of their property without due process of law. The supreme court of the United States, in passing upon this question, says:

"We reiterate the statement made in *Davidson v. New Orleans, supra,* that, 'whenever by the laws of the state or by state authority a tax, assessment, servitude or other burden is imposed upon property for the public use, whether it be for the whole state or of some more limited portion of the community, and those laws provide for a mode of confirming or contesting the charge thus imposed in the ordinary courts of justice, with such notice to the person or such proceeding in regard to the property as is appropriate to the nature of the case, the judgment in such proceedings cannot be said to deprive the owner of his property without due process of law, however obnoxious it may be to other objections.' " *Fallbrook Irrigation District v. Bradley,* 164 U. S. 112 (17 Sup. Ct. 56); *Davidson v. New Orleans,* 96 U. S. 97.

It is true that in the act in question no provision is made in positive terms for confirming or contesting, in the ordinary courts of justice, the charge imposed. Under the act, when the assessment is made it is placed upon a tax roll. It may be paid in installments as provided in the act. The act further provides, if any installment is not paid, the county attorney must proceed at once by a civil action to collect such charges and foreclose the lien therefor. In the case of *Garvin v. Daussman,* 114 Ind. 429 (5 Am. St. Rep. 637, 16 N. E. 826), which was a proceeding to foreclose a lien for a street improvement where no provision was made for notice and hearing, the court said:

"To give each property owner the right to contest every step in such an undertaking, would be, in effect, to prohibit the improvement, or render its execution practically impossible in many instances. If, therefore, the law provides for giving notice and for a method whereby the property owner may ultimately challenge the correctness of the assessment made against his property, in respect to whether it was made in good faith, without intervening mistake or error, and according to the method and under the safeguards provided by the law,—the constitutional provision is to be deemed satisfied. These ends seem to have been adequately provided for by the ordinance under which the improvement involved in the present case was made. It is conceded that, under the ordinance, the assessment against the appellant's property could only be enforced by legal proceedings in a court having jurisdiction to foreclose mortgages. Such proceedings could only be taken in pursuance of notice, and in a court in which ample opportunity would be afforded for questioning the validity of the proceedings for the improvement of the street, and of all other matters respecting the legality and amount of the assessment, or which might constitute a legitimate cause of grievance to the property holder."

In the suit, then, to enforce the lien, the property owner might set up any matter respecting the amount or legality of the assessment. But if this remedy was not sufficient, under the general laws of the state, at the time the act was passed, it was provided that the superior court should have jurisdiction in special cases and proceedings not otherwise provided for, with power to issue writs of review and certiorari. Where no appeal is given, certiorari will lie, and many cases hold that, where there is no remedy by appeal, all questions may be reviewed under the writ of certiorari. Elliott, Roads & Streets (2d ed.), § 372.

At the same session of the legislature at which the act in question was passed, the legislature enlarged the functions of the writ of certiorari, and when this action was brought under §§ 5740 to 5757, Bal. Code, a full and ample remedy for reviewing the proceedings of the board of county commissioners, even to a review of the evidence, was provided by law. *Browne v. Gear*, 21 Wash. 147 (57 Pac. 359).

We conclude, therefore, that the act of 1895 does not seek to deprive the owner of property of the same without due process of law.

The last point urged by the appellants is well taken. For the reasons already given,—that the state by appropriate legislation may provide for the payment of the assessment on school lands,—we think such lands should not be excluded from the assessment for the cost of the improvements. The judgment of the court is therefore so far modified as to require the assessment of the cost of the improvements to each lot, tract of land, etc., in the district, including the school land mentioned in the answer, and the court below is directed to enter judgment

accordingly, and, as so modified, the judgment of the court is affirmed, with costs to the appellants.

REAVIS, C. J., and FULLERTON, HADLEY, MOUNT and ANDERS, JJ., concur.