[No. 7793.  Decided October 5, 1909.]

SPRING WATER COMPANY, *Appellant*, v. TOWN OF MONROE,
*Respondent.*[1]

COUNTIES — FRANCHISES — LEGISLATIVE VALIDATION — HIGHWAYS.
Laws 1905, p. 210, §§ 2, 3, validating franchises granted by the county
commissioners to use county roads or highways "outside the limits"
of incorporated cities or towns, to the extent that such roads have
been actually occupied prior to the passage of the act, refers to
grants made outside of city limits at the time of the attempted
grant, and is not limited to franchises granted in territory still un-
der control of the county commissioners at the time of the passage
of the act (CROW, J., dissenting).

STATUTES—RETROACTIVE LAWS—CURATIVE ACTS—MUNICIPAL COR-
PORATIONS—COUNTIES—FRANCHISES.  The legislature has power to
pass a retroactive curative statute which validates the *ultra vires*
county grant of franchises in public roads outside of the limits of a
city, actually occupied, although the territory has since become in-
corporated as a town of the fourth class.

MUNICIPAL CORPORATIONS — INCORPORATION — EFFECT—CONTROL OF
STREETS—PRIOR FRANCHISES.  A town upon its incorporation does
not acquire any such vested right to the control of its streets in
virtue of its authority over streets, granted by Bal. Code, § 1011, as
would prevent the legislature from legalizing prior franchises.

Appeal from a judgment of the superior court for Sno-
homish county, Black, J., entered May 9, 1908, upon sus-
taining a demurrer to the complaint, dismissing an action
to enjoin a town from interfering with a water system be-
longing to the plaintiff.  Reversed.

*Blaine, Tucker & Hyland*, for appellant.
*Cooley & Horan*, for respondent.

PER CURIAM.—Action by Spring Water Company, a cor-
poration, against the town of Monroe, a municipal corpora-
tion, to enjoin and restrain the defendant from tearing up
or interfering with water pipes belonging to the plaintiff.

[1]Reported in 104 Pac. 202.

A demurrer being sustained to the complaint, the plaintiff declined to plead further, the action was dismissed, and the plaintiff has appealed.

The only question before us is the sufficiency of the complaint. It alleged, that on June 17, 1901, the commissioners of Snohomish county granted to the appellant a franchise for fifty years, to lay down and maintain water mains and pipes along, across, over and under all streets and alleys in Monroe and Tyee city, and other highways in Snohomish county; that pursuant to, and under the authority of, the franchise, the appellant immediately commenced operations, and laid pipes in the streets and alleys of Monroe, doing so with the knowledge and approval of its inhabitants and of the county commissioners; that Monroe was incorporated as a town of the fourth class in January, 1903; that in 1905 an act of the legislature of Washington entitled, "An Act giving to County Commissioners the power to grant certain public utility franchises on county roads and streets outside of incorporated towns and cities, and confirming certain such grants heretofore made," was passed, and was approved by the governor on March 9, 1905 (Laws 1905, p. 210, ch. 106) ; that the territory and jurisdiction of the town of Monroe now extends over lands and streets mentioned and included in the franchise; that the council of the town of Monroe, on April 8, 1906, adopted a resolution directing appellant to discontinue the maintenance of its water system, and that unless it be restrained by order of court, it will tear up and remove appellant's water pipes, destroy its business, and cause it irreparable damage.

In *State ex rel. Spring Water Co. v. Monroe*, 40 Wash. 545, 82 Pac. 888, the act of the county commissioners in attempting to grant the identical franchise pleaded in this action was held to have been *ultra vires* and void. It appears from the pleadings, however, that the appellant had, at an outlay of $3,500, laid pipes and mains in the streets and alleys of the present town of Monroe before its incorpora-

tion. Pending that litigation and with evident intent to cure
the like acts of the commissioners in the several counties in
the state, the legislature passed the act of 1905; the par-
ticular parts of which affecting our present inquiry are found
in sections 2 and 3, and are as follows:

"That any and all grants, rights, privileges, franchises or
powers heretofore made or attempted to be made, given or
granted by the board of county commissioners of any county
in this state, when such board was in regular or special ses-
sion, and when the action of such board is shown by its
records, to any person or corporation, . . . to lay or main-
tain pipes for the distribution of water, or gas, in, upon,
along, through or over public roads and highways, or any
public road or highway, outside the limits of incorporated
cities and towns, be and they are hereby confirmed and de-
clared to be valid to the extent that such road or highway
has been, prior to the passage of this act, actually occupied
by the *bona fide* construction and operation of such utility
and no farther.

"Said rights, powers and grants so made or attempted to
be made and hereby confirmed, shall have and be of the same
force and effect as if the county commissioners in any county
of this state, prior to the time of giving or granting said
rights, privileges and franchises, had been specifically au-
thorized and empowered to give and grant the same." Laws
1905, p. 210, §§ 2, 3.

It is contended by respondent that, (1) the intent of the
act was to limit the territory over which the ratification is
to extend, to territory outside of cities and towns; and, (2)
the town of Monroe having been incorporated subsequent to
the attempted grant, that the act of the legislature is in-
effectual to attain the object sought, if the legislative intent
were otherwise. As viewed by a majority of the court, the
act is too plain for construction. It provides that any and
all franchises theretofore made or attempted to be made,
given or granted by the board of county commissioners, to
lay or maintain pipes for the distribution of water along
through or over any public road or highway outside of the
limits of incorporated cities and towns are declared to be

valid, to the extent that such road or highway has been *prior
to the passage of the act* actually occupied. Its evident pur-
pose was to protect investments made and property acquired
in good faith under an *ultra vires* order of the county com-
missioners. The words "outside the limits of incorporated
cities and towns," must then be held to refer to the time of
the attempted grant, and to cover the acts of the grantee to
the extent to which it has exercised the power attempted to
be granted, and not to the date of the validating act. Other-
wise the act of 1905 was a vain and useless thing, in so far
as cities and towns were concerned, and all reference to them
is an idle expression carrying no weight to extend or limit
the operation of law. To give the act any other construction
would necessitate the rejection of the words quoted alto-
gether. This the courts cannot do arbitrarily. It is the
duty of the court to give effect, if possible, to every word and
·phrase of an act when it is challenged.

The real question, therefore, is the power of the legisla-
ture to pass a curative act which will relate back and vali-
date the occupation of a road or highway, which is after-
wards, and before the passage of the act, included within the
limits of an incorporated town. Respondent puts particular
reliance upon the opinion of Chief Justice Dixon in *Has-
brouck v. Milwaukee,* 13 Wis. 42. In that case it was held
that a void contract could not be validated by an act of the
legislature as against the consent of a city. That case has
no application here. The right of the town to contract is
not impaired, nor does it suffer any unwarranted burden. The
municipality was organized subject to property rights then
existing or which the legislature might by general law there-
after recognize or create. Curative laws are not discounte-
nanced because they are retroactive. Upon this point the
authority relied upon has become a leading case in Wiscon-
sin. As was said in *Richland County v. Richland Center,*
59 Wis. 591, 600:

"There is no constitutional inhibition against the passage

of retrospective laws as such. The only question in such case is whether the legislature intended them to have a retroactive effect, and, if so, such effect is given to them by the courts. The objection in respect to such laws is not because they are retroactive, but that they disturb vested rights or impair the obligation of contracts which were acquired or assumed under them and dependent upon them. In such cases they are invalid, not because retroactive, but on other constitutional grounds."

In that case the village had purposely failed to pay over certain moneys collected for liquor licenses, and which under existing laws should have been paid to the county for the support of the poor. An act was subsequently passed legalizing such conduct on the part of all offending boards, trustees, and city councils. The trial court held that the county had such a vested interest in the fund that the legislature could not take it away. Upon appeal the case was reversed, the court holding, *inter alia*, as above indicated.

Towns and cities are created by the authority of, and are subject to, the will of the legislature. If it could have authorized the act of appellant in the first instance by appropriate legislation, it can, by a subsequent act, ratify and confirm the *ultra vires* act of the commissioners, and thus preserve rights of property.

Judge Stiles in *Baker v. Seattle*, 2 Wash. 576, 27 Pac. 462, says that it is a principle long sustained by the courts, "that where a municipal corporation has done an act beyond its statutory powers, but within the powers which it was competent for the legislature to have conferred upon it, the act may be validated by a curative statute." The validity of such acts have been frequently upheld by this court. *Holmes & Bull Furniture Co. v. Hedges*, 13 Wash. 696, 43 Pac. 944; *West Seattle v. West Seattle Land and Imp. Co.*, 38 Wash. 359, 80 Pac. 549; *Lewis County v. Gordon*, 20 Wash. 80, 54 Pac. 779; *State ex rel. Latimer v. Henry*, 28 Wash. 38, 68 Pac. 368; And, also, *Pullman v. Hungate*, 8 Wash. 519, 36 Pac. 483; *State ex rel. Hemen v. Ballard*,

16 Wash. 418, 47 Pac. 970; *Abernethy v. Town of Medical Lake*, 9 Wash. 112, 37 Pac. 306, in which the several municipalities were charged under the act of 1893 with obligations incurred by the antecedent void incorporation.

It cannot be held, as it seems to have been assumed, that the town of Monroe acquired upon its organization any vested right to the control of its streets in virtue of § 1011 of Ballinger's Code (P. C. § 3524). It is elementary that what is given by statute may be taken away by statute.

" 'It is an unsound and absurd proposition, that political power conferred by the legislature can become a *vested right*, as against the government, in any individual or body of men. It is repugnant to the genius of our institutions, and the spirit and meaning of the constitution, for by that fundamental law all political rights not then defined and taken out of the exercise of legislative discretion were intended to be left subject to its regulation. If corporations can set up a vested right against the government to the exercise of this species of power, because it has been conferred upon them by the *bounty* of the legislature, so may any and every officer under the government do the same.' It is competent for the legislature to transfer the control of the streets even to a body foreign to the corporation, and the moneys to repair the same. 1 Dillon on Mun. Corp., 292; *Bristol v. New Chester*, 3 N. H. 524; *Benson v. Mayor of New York*, 10 Barb. 223; *People v. Walsh*, 96 Ill. 232." *Richland County v. Richland Center, supra.*

Our conclusion is that the act is vital to preserve the property of appellant, and that the town of Monroe must exercise its general powers subject to the right of appellant to maintain its water system as it is now maintained in the streets of the town, subject of course to such reasonable regulations as may now or hereafter be enacted by the town council. The rights of all municipalities affected by the act of 1905 are, as is most aptly stated by Chancellor Kent, "deemed to have vested subject to the equity existing against them and which the statutes have recognized and enforced."

The judgment of the lower court is reversed, and this

cause remanded with instructions to overrule the demurrer to appellant's complaint.

CROW, J. (dissenting)—I dissent from the majority opinion. The act of 1905, on which appellant relies, fixes and limits the territory over which ratification is to extend. Its manifest purpose is to validate franchises within territory over which the commissioners still retain jurisdiction, and relieve the grantees and holders of void franchises from the necessity of making further application to the county commissioners for their renewal or validation. At the time of the passage of the act, the jurisdiction of the county commissioners over the streets and alleys of Monroe had been terminated by the incorporation of the town, and it would seem that the words "outside the limits of incorporated cities and towns" were only intended to apply to roads, alleys, and highways still under the jurisdiction and control of county commissioners at the date of the passage of the act, and to exclude those then within the territory of any such municipality, although outside at the time of the granting of the original void franchise. To adopt any other construction would be to withdraw from the town council a portion of its power and authority conferred by Bal. Code, § 1011 (P. C. § 3524), and deprive them of that complete authority over the streets, alleys, and highways within the municipality granted by that section.

I am of the opinion that the act did not validate the appellant's void franchise as to any street, alley, or highway, which at the date of its passage was within the municipal boundaries of the town of Monroe. When the town was incorporated, appellant was occupying a portion of its streets without legal right or authority. The complete jurisdiction of the town at that time extended by operation of law over all such streets freed from the burden of any franchise or rights asserted by the appellant, and this court should not hold that the act in question afterwards imposed any such burden, without the consent of the municipal authorities, unless it was

the clear and manifest intention of the legislature that such a condition should result. The use of the words "upon highways *outside* of the limits of incorporated towns, . . . are hereby confirmed and declared to be valid," precludes us from adopting any such construction.

The judgment should be affirmed.