Iowa Electric Light & Power Company, Appellant, v. Incorporated Town of Grand Junction et al., Appellees.

No. 42695.

December 17, 1935.

Rehearing Denied June 20, 1936.

See, also, 217 Iowa 291, 251 N. W. 609.

Salinger, Reynolds & Myers, and Graham & Graham, for appellant.

O. C. Metzger, George A. Rice, and Clark, Byers, Hutchinson & Garber, for appellees.

HAMILTON, J.—In the year 1932, the town of Grand Junction, Iowa, entered into a contract with Fairbanks, Morse & Co. for the construction of an electric light and power plant for said town, to be paid for solely from the net earnings of said plant. Statutory authority therefor is provided by chapter 312 of the Code, section 6127 et seq. An action to restrain the town from carrying out said contract was instituted by the plaintiff, Iowa Electric Light & Power Company, which was at that time furnishing light and power to said town. From a decision in favor of the town, sustaining the contract, appeal was taken to this court, with the result that the judgment of the lower court was reversed, on the ground that the statutory provisions in reference to competitive bidding in the letting of said contract had not been complied with, and that the contract was therefore void. See the case of Iowa Electric Light & Power Co. v. Incorporated Town of Grand Junction, 216 Iowa 1301, 250 N. W. 136.

Thereafter, to wit, on January 19, 1934, the state legislature passed and adopted a legalizing act (Acts 45th G. A. Ex. Sess., ch. 225), purporting to make legal and valid the contract and proceedings which had theretofore been declared void by this court. After reciting in the preamble the history of the proceedings, the act provides:

"BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF IOWA:

"Section 1. That all proceedings relating to the election held May 12, 1932, in the town of Grand Junction, Greene county, Iowa, on the proposition of establishing and constructing a municipal electric light plant; and all proceedings taken by the council of the town of Grand Junction, subsequent to said election, in advertising for bids, filing plans and specifications, and

the letting of a contract to Fairbanks, Morse & Company, under the provisions of sections 6134-d1 to 6134-d7, inclusive; and the contract entered into between the town of Grand Junction and Fairbanks, Morse & Company, on July 19, 1932, for the construction of said municipal electric light plant, and the pledge-orders issued in connection therewith, are hereby declared to be legal and valid notwithstanding any irregularity, omission or defect in connection therewith, and that said contract entered into between the town of Grand Junction, Iowa, and Fairbanks, Morse & Company, and the pledge-orders issued in connection therewith, shall be and are hereby declared to be valid, and the said town of Grand Junction is hereby authorized to accept said municipal electric light plant, and pay for the same as provided in said contract and pledge-orders.

"Sec. 2. This act, being deemed of immediate importance, shall be in full force and effect from and after its publication in the Grand Junction Globe, a newspaper published in Grand Junction, Iowa, and in the Jefferson Bee, a newspaper published in Jefferson, Greene county, Iowa, without expense to the state."

The bill was duly signed, certified, published, and approved, as provided by law, and became operative January 25, 1934.

On January 30, 1934, the defendants and each of them filed their application for an order modifying and setting aside the original judgment and decree, in which application they set up the history of the events leading up to the curative act, or legalizing act of the Legislature, and prayed that that portion of the judgment restraining them and each of them from carrying into effect the contract with Fairbanks, Morse & Co., hereinbefore referred to, be modified and set aside, and that said contract be determined to be a valid, binding obligation of the respective parties thereto.

An order modifying the original decree was entered on the 14th day of March, 1934, as follows:

"Now THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that the contract made and entered into by and between the Incorporated Town of Grand Junction, Iowa, and Fairbanks, Morse & Company, on the 19th day of July, 1932, for the erection of an electric light and power plant and distributing system for the Town of Grand Junction, Iowa, be and the same

is determined to be a valid, binding contract by and between the parties thereto.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the order permanently enjoining the defendants and each of them as provided for in said decree, entered on the 20th day of December, 1933, from carrying into effect the said contract, be and the same is hereby modified, set aside and determined to be of no further force and effect.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED, that nothing in this decree shall in any wise supersede any part of the final decree heretofore entered in this cause on the 20th day of December, 1933, until the 23rd day of March, 1934, and to all of which the plaintiff excepts."

From the granting of this order, plaintiff has again appealed to this court.

It is claimed by appellant that the modifying order of the lower court is erroneous for the reason that it is based upon the validity of the legalizing act, and that the legalizing act is void and of no effect. It will thus be seen that the decision of this case rests entirely with the construction to be placed by this court upon the so-called "curative act" or legalizing act.

The case has been ably presented, and the legal propositions involved quite exhaustively argued by eminent counsel, which, we gratefully acknowledge, has been of invaluable assistance to the court in attempting to arrive at a correct conclusion in the solution of the troublesome questions presented.

May the legislature, under the limitations of the state and federal constitutions, pass a special act legalizing a contract made by a municipality and the proceedings thereunder, which have previously been declared by this court void as being in excess of and beyond statutory authority granted to the municipality, as in the instant case? And in attempting to so do by the act in question, has the legislature trespassed upon established constitutional limitations?

The errors relied upon for reversal, Nos. 1 to 7, in appellant's brief, may be grouped as follows:

First. The legalizing act is unconstitutional and void, and therefore no law, because it is in violation of, and repugnant to, section 6 of article I, and likewise of section 30 of article III of the Constitution of the state of Iowa, and of the Fourteenth Amendment to the Constitution of the United States.

Second. The contract of the town of Grand Junction with Fairbanks, Morse & Co., having been held invalid by this court, the legalizing act is an infringement of the legislature upon the power vested exclusively in the judicial branch of the government, and hence is in contravention of section 1, article III, of the State Constitution.

Third. The plaintiff is thus deprived of its vested rights under the prior judgment of this court, in violation of the Fourteenth Amendment to the Federal Constitution, whereby the state is forbidden to pass any law denying any person the equal protection of the law or depriving any person of property without due process of law.

I. What are the powers possessed by the legislature over municipalities of the state?

In the case of City of Clinton v. Cedar Rapids & M. R. R. Co., 24 Iowa 455, Judge Dillon, speaking for the court, said:

"Municipal corporations owe their origin to, and derive their powers and rights wholly from, the legislature. It breathes into them the breath of life, without which they cannot exist. As it creates, so it may destroy. If it may destroy, it may abridge and control. Unless there is some constitutional limitation on the right, the legislature might, by a single act, if we can suppose it capable of so great a folly and so great a wrong, sweep from existence all of the municipal corporations in the State, and the corporation could not prevent it. We know of no limitation on this right so far as the corporations themselves are concerned. They are, so to phrase it, the mere tenants at will of the legislature. This plenary power on the part of the legislature over public corporations, saving vested rights of property and of creditors, is a doctrine so well settled that it is unnecessary to refer to more than a few cases asserting it."

We said in the case of McSurely v. McGrew, 140 Iowa 163, at page 173, 118 N. W. 415, 419, 132 Am. St. Rep. 248:

"Within its field, the legislature is supreme. * * * and the legislature has plenary power * * * subject only to constitutional limitations or prohibitions. Its power is not a delegated one, but * * * it may exercise *all powers* not forbidden by the Constitution of the state, or delegated by the people to the general government, or prohibited by the Constitution of the United States." (Italics are ours.)

It may therefore be stated that the legislature has plenary power over all municipalities within the state, subject only to the above constitutional limitations and subject to the further limitation that it may not, under the guise of legislative control, deprive a private citizen of vested rights.

■■ II. If the thing wanting, or which failed to be done, and which constitutes the defects in the proceedings, is something, the necessity for which the legislature might have dispensed with by prior statute (in the instant case, competitive bidding), then it is not beyond the power of the legislature to dispense with it by subsequent statute; and if the irregularity consists in doing some act, or in the mode or manner of doing some act, which the legislature might have made immaterial by prior law, it is equally competent to have made the same immaterial by a subsequent law. Cooley, Constitutional Limitations cited in Ferguson v. Williams, 58 Iowa 717, 13 N. W. 49. See, also, State v. Squires, 26 Iowa 340; Iowa Railroad Land Co. v. Soper, 39 Iowa 112; McSurely v. McGrew, 140 Iowa 163, 118 N. W. 415, 132 Am. St. Rep. 248; Peverill v. Board of Supervisors, 201 Iowa 1050, 205 N. W. 543; Chicago, R. I. & P. R. Co. v. Rosenbaum, 212 Iowa 227, 231 N. W. 646; Chicago, R. I. & P. R. Co. v. Streepy, 211 Iowa 1334, 236 N. W. 24.

We think counsel for appellant concedes this proposition, but contends that the act must be of uniform operation; that it cannot be done by an act having only local or special application; that such legislation is inhibited by article III, section 30, of the State Constitution, which is:

"Sec. 30. The General Assembly shall not pass local or special laws in the following cases:

"For the assessment and collection of taxes for State, County, or road purposes;

"For laying out, opening, and working roads or highways;

"For changing the names of persons;

"For the incorporation of cities and towns;

"For vacating roads, town plats, streets, alleys, or public squares;

"For locating or changing county seats.

"In all the cases above enumerated, and in all other cases where a general law can be made applicable, all laws shall be general, and of uniform operation throughout the State."

Appellant further contends that it violates section 6, article I, providing that all laws of a general nature shall have a uniform operation, and prohibiting the granting to any citizen or class of citizens privileges or immunities which upon the same terms shall not equally belong to all other citizens.

This identical question was before the court in the case of State v. Squires, 26 Iowa 340, where the same constitutional questions were raised. It involved the legality of the organization of an independent school district; the law at that time providing that a district should contain 300 inhabitants, and that 10 days notice of its organization should be given, which, it was alleged and proven in the case, had not been complied with. An act was passed by the legislature legalizing the organization of said district, notwithstanding the fact that it did not have the requisite number of inhabitants, and notwithstanding the fact that notice as provided by law had not been given, and this legalizing act was attacked as unconstitutional for the same reasons advanced by appellant in the instant case. The court said:

"In our view, however, the act set up in the defendant's answer is not, in any just sense, a law creating a corporation, but is, both in law and fact, what its title purports, a curative act legalizing the defective organization of an independent school district."

The court further says: "It cannot be successfully controverted that the legislature has the power to create, or authorize the creation of independent school districts. This power, however, must be exercised by a general law of uniform operation, and it has been so exercised. See Laws of 1862, ch. 172."

It was asserted in that case that the act violated the constitutional provision against the passage of any local or special laws in certain enumerated cases "and in all other cases where a general law can be made applicable." The court said:

"That this is a local law cannot well be questioned. Is it a case where a general law can be made applicable? Certain irregularities in the manner of the organization of the independent school district of Epworth, are alleged to have occurred. No other such precise or analogous case is alleged or suggested as existing anywhere else in the State. No legal presumption arises that there is one. A general law, therefore, which would be

suited to the necessities of the independent school district of Epworth, could have no other or greater operation than the act in question; and if it could or would have no other effect, then no advantage could be derived, nor any evil avoided, by making a general law instead of the law which was enacted. This law, then, is not within the evil which the Constitution sought to provide against, nor would the enactment of a general law therein afford any remedy for, or relief from, that evil. * * * A general law, therefore, would not be applicable under the meaning of that term, as used in the Constitution. The act is not in conflict with article 3, section 30, or article 1, section 6.''

So in the case at bar it must be admitted that the act of the legislature is a local or special act. It applies to no other town and could apply to no other town within the state of Iowa. There is no evidence introduced, and there is no presumption, that any other town in the state of Iowa was similarly situated. See, also, Haskel v. City of Burlington, 30 Iowa 232; Iowa Railroad Land Co. v. Soper, 39 Iowa 112; Ferguson v. Williams, 58 Iowa 717, 13 N. W. 49.

Another case which is ''on all fours'' with the case at bar is Richman v. Board of Supervisors, 77 Iowa 513, 42 N. W. 422, 425, 4 L. R. A. 445, 14 Am. St. Rep. 308. The issues arose on a writ of certiorari to the board of supervisors of Muscatine county, to test the legality of certain proceedings, pertaining to the construction of a levee on Muscatine Island. Section 1207 of the Code of 1873, in force at that time provides:

''Section 1207. The board of supervisors of any county having a population of ten thousand inhabitants, as shown by the last preceding census, may locate and cause to be constructed ditches or drains, or change the direction of any water-course in such county, whenever the same will be conducive to the public health, convenience, or welfare.''

It will thus be seen that this section granted to the board of supervisors power to locate and construct ditches and drains. The next section provides the manner of procedure:

''Sec. 1208. A petition signed by a majority of persons resident in the county, owning land adjacent to such improvement, shall be first filed in the office of the county auditor, set-

ting forth the necessity of the same, the starting point, route, and termini.''

The procedure therein provided for had not been complied with. The levee was constructed. A suit was brought by certain property owners, and the court held that the board of supervisors had acted illegally, and that it had no jurisdiction because the provisions of section 1208 had not been complied with, and the said petition had not been filed with the county auditor, and the assessment for the costs of construction of said improvement was adjudged invalid and set aside by the court.

The county in that case was in the same dilemma in which the town of Grand Junction found itself, after our court had held the contract with Fairbanks, Morse & Co. void. In each case the improvement had been constructed and was in operation. In each case there was an adverse adjudication by the highest court in the state that the proceedings were void. The Twenty-first General Assembly attempted to meet the situation by a curative act, legalizing the action of the board of supervisors. The act will be found in chapter 17, Acts of the 21st General Assembly, and a reading of the same will reveal that the decision of the Supreme Court was directly referred to in the preamble to the act, as was done in the instant case. It was contended in the Richman case that where there is want of jurisdiction, and the acts done by the municipal body are for that reason void, no curative act can ever reach them. The court said:

''It cannot be questioned that the curative act is both local and special in its application. Its whole tenor and bearing are to that end. It is in aid of a particular and a local enterprise. It can only be sustained upon the theory that a general law cannot be made applicable. Counsel for appellants, in argument, ingeniously, by way of illustration, attempt to show that a general law would reach the object. If the mere wording of the law, without regard to legislative purpose, is to be the guide for constitutional interpretation, we have no doubt that it could be effected. But was such the intention of the framers of the constitution? To so hold is to place ourselves in harmony with the often repeated attempts at legislative evasion, when confronted by constitutional law, which we have no desire to do. It would be difficult to conceive a state of facts that could not be brought within the provisions of a general law, with such a construction.

No such purpose was intended by the constitutional enactments, but on the contrary, it presumes conditions under which general laws are not applicable, and special or local laws are designed.''

There are numerous other cases supporting the Squires case and the Richman case, but it is unnecessary to quote further from our holdings. See, however, the cases above cited.

It is strenuously contended, however, by the appellant that this case is ruled by the Cedar Rapids Water Works case, reported in 118 Iowa 234, 242, 91 N. W. 1081, 1084. In fact, the appellant's entire contention is without substantial support in any of the prior holdings of this court with the exception of this one, lone, Cedar Rapids case, and it is on the rather strained, and free-hand exposition on the constitutional question involved in that case by the eminent jurist, the late Justice Weaver, that appellant relies, and the gist of its entire argument centers around this language contained in that opinion:

''The effect of the legalizing act under consideration, in so far as it is applicable to the grant of a franchise beyond the limit of twenty-five years, is no more or less than an attempt to except or release the city of Cedar Rapids from the operation of a general statute which remains in full force against all other municipalities of the state, and thus accomplish by the device of a legalizing act that which the legislature could not do by direct enactment.''

The court, by way of illustration, said.: ''If the legislature, in enacting section 473 of the Code of 1873 [limiting the granting of a franchise to a period of twenty-five years], had added thereto a proviso as follows, 'Provided, that the limitation herein made upon the powers of cities and towns shall not apply to the city of Cedar Rapids,' we think no lawyer would contend that under our constitution such legislation would be of any validity.''

Certainly not. And no one contends that such proviso would be legal under such circumstances.

The fallacy of appellant's contention is pointed out by Justice Deemer in the case of McCain v. Des Moines, 128 Iowa 331, 333, 103 N. W. 979, 980, wherein the Cedar Rapids case was advanced as controlling in a case similar to the case at bar. The personnel of the court was the same as when the Cedar Rapids case was determined. The court said:

"In the Cedar Rapids Water Co. v. Cedar Rapids, 118 Iowa 234, 91 N. W. 1081, a legalizing act was held invalid because it did not have general application. *In that case a general law could have been made applicable,* and therefore the act under consideration there was held invalid. *In the present case it is manifest that a general law could not have been made applicable;* hence the Cedar Rapids case is not in point." (Italics are ours.)

Hence, we conclude that our court, as then constituted, did not intend the Cedar Rapids case to have the meaning contended for by appellant, when applied to a fact situation, such as we have in the Grand Junction case before us. A careful reading of the Cedar Rapids case will show that the constitutional question was only incidentally considered. In the statement of the issues, no mention is made of the constitutional matter, and the court concludes its discussion of that branch of the case by saying:

"This branch of the discussion has been based upon the plaintiff's theory that the words 'and an equal right thereafter with all others' were intended as the grant of a franchise beyond the period of twenty-five years. We think, however, it is not a violent rendering of the language to construe it simply as an undertaking that the water company shall have an equal opportunity with others in competing for a new franchise when the original exclusive grant for twenty-five years has expired."

We might add that this view of the court is strengthened by the fact that the use of the streets and alleys of the city for use of the water company was limited to 25 years, and that the only life or vitality the franchise ever had, regardless of the curative act, was for the term of 25 years.

III. Does the act of the legislature invade the powers of the judiciary? In the Richman case, already referred to under division 2 of this opinion, there had been a prior adjudication, holding the proceedings of the board of supervisors void and illegal, and setting aside the special assessment. In discussing that phase of the case, the court said:

"It is urged with much earnestness that the prior suit in this court between these parties constitutes a bar to any proceedings under the curative act for the assessment and collection of

these taxes, on the ground that by such adjudication the assessment and levy thereof were declared void. The taxes in the former suit were avoided on the ground that there had been no legal assessment or levy. The object of the curative act was to create an obligation on the part of those who had been benefited by the improvement to pay therefor. The act makes direct reference to the adjudication, and provides for a reapportionment and reassessment with a view to a redetermination of the question of liability. We think it was competent for the legislature to so provide. The authority of the legislature to provide for new trials or the re-examination of issues is not questioned. The former trial determined no vested interest or right, and is in no sense a bar to the proceeding under the new law.''

In the case of City of Clinton v. Walliker, 98 Iowa 655, 660, 68 N. W. 431, 432, the curative act was passed after the action was commenced, but before the decision of the court. In that case we said:

''There is no doubt that this act was passed for the very purpose of legalizing the proceedings of the city council of Clinton in relation to the paving of its streets. It was passed after this action was commenced. If valid in other respects, the fact that this action was then pending does not affect the curative act.''

Likewise, in the Squires case, heretofore referred to, we used this language:

''Nor is it material that a cause was pending involving the question of the validity of the proceeding sought to be cured, when the act curing it was passed.''

''The mere fact that the legalizing act had been passed while the litigation was pending gave the plaintiff no vested right, for the bringing of a suit vests no right in a particular decision. * * * There was no final judgment. We are not called upon to determine what might have been the result, had a final judgment been entered in favor of the appellant prior to the enactment of the curative act, but, on this question, see Hodges v. Snyder, 261 U. S. 600, 43 S. Ct. 435, 67 L. Ed. 819; Rafferty v. Smith, B. & Co., 257 U. S. 226, 232, 42 S. Ct. 71, 66 L. Ed. 208, 210; United States v. Heinszen & Co., 206 U. S. 370, 27 S.

Ct. 742, 51 L. Ed. 1098, 11 Ann. Cas. 688; Richman v. Supervisors, Muscatine County, 77 Iowa 513, 42 N. W. 422, 4 L. R. A. 445, 14 Am. St. Rep. 308; Chicago, R. I. & P. R. Co. v. Rosenbaum, 212 Iowa 227, 231 N. W. 646, and cases cited. It cannot be said, as claimed by the appellant, that there has been any interference with the powers of the judiciary of this state by a co-ordinate branch of the state government, the legislature. In harmony with the decision of this and other states and the federal courts upon facts such as appear in this cause, it was within the power of the legislature to enact the legalizing act in question, and thereby legalize retroactively the original taxes involved in this case." Chicago, R. I. & P. R. Co. v. Streepy, 211 Iowa 1334, 1342, 236 N. W. 24, 28.

Likewise, in the case of Carr v. District Court, 147 Iowa 663, 676, 126 N. W. 791, 795, Ann. Cas. 1913D, 378, a certiorari proceeding to review an order granted in a contempt proceeding brought against certain individuals, members of a school board, which involved an act, legalizing certain school warrants which had been declared by the court to be illegal and which the officers of the school district had been perpetually enjoined from paying, it was claimed that the act of the legislature set aside the decree of the court, and that the act was unconstitutional and void. Judge Deemer, speaking for the court, said on this question:

"The main point made by plaintiffs' counsel in this connection is that the legislature had no right, power or authority to modify or in any manner change a decree of court. Of course this is the general, although not an universal, rule. The rule applies to private and individual rights, and not in full force, if at all, to actions affecting municipal or quasi municipal corporations or to bodies municipal or otherwise which have been created as a part of the instrumentalities of government. In its sovereign capacity the state may deal with these instrumentalities or governmental agencies in a manner quite different from its dealings with individuals or private corporations or municipal corporations in so far as their private rights are concerned. See, as supporting these views, Guthrie Nat. Bank v. Guthrie, 173 U. S. 528, 19 S. Ct. 513, 43 L. Ed. 796; Utter v. Franklin, 172 U. S. 416, 19 S. Ct. 183, 43 L. Ed. 498. In the latter case there had been a judgment of court invalidating a bond issue

454

which was afterward validated by act of Congress. See, also, Richman v. Board of Supervisors, 77 Iowa 513, 42 N. W. 422, 4 L. R. A. 445, 14 Am. St. Rep. 308; McSurely v. McGrew, 140 Iowa 163, 118 N. W. 415, 132 Am. St. Rep. 248.''

Our cases are in harmony with the Supreme Court of the United States on this question. In the case of Utter v. Franklin, 172 U. S. 416, 19 S. Ct. 183, 186, 43 L. Ed. 498, 501, we find this language:

''The fact that this court had held the original Pima county bonds invalid does not affect the question. They were invalid because there was no power to issue them. They were made valid by such power being subsequently given, and it makes no possible difference that they had been declared to be void under the power originally given. The judgment in that case was *res judicata* only of the issues then presented, of the facts as they then appeared, and of the legislation then existing.''

What the legalizing act undertook to accomplish was to validate the very thing which the Supreme Court, by its decision, had held invalid, not from its inception, but to make it legal and valid and binding as and of the date that the act went into effect. It was not an invasion by the legislature of the powers vested in the judiciary and in violation of section 1 of article III of the State Constitution. It is not in any degree an attempt on the part of the legislature to recall the decision of the Supreme Court; on the other hand, it is a valid exercise of its constitutional prerogative and sovereign power over one of its agencies of local government of its own creation. It is a wholesome rule, in that it stops endless litigation and quiets property rights and is in the interest of the public good.

It would serve no useful purpose to further extend this opinion by quotations from other and prior holdings of this court, but see, as bearing on the general principles involved, Windsor v. City of Des Moines, 101 Iowa 343, 70 N. W. 214; Chicago, R. I. & P. R. Co. v. Rosenbaum, 212 Iowa 227, 231 N. W. 646; Peverill v. Board of Sup'rs, 201 Iowa 1050, 205 N. W. 543; Mote v. Carlisle, 211 Iowa 392, 233 N. W. 695; Chicago, B. & Q. R. Co. v. Board of Supervisors of Appanoose County, 211 Iowa 1334, 236 N. W. 24.

We conclude that under the prior holdings of our court, the

legislature could have dispensed with the matter of competitive bidding in the first instance, and that, therefore, it had the power to remedy by curative act by dispensing with competitive bidding after the work was done; that it was a matter of discretion with the legislature in the first instance to require the performance of these conditions precedent, and hence it may waive a failure to perform them; that it was not a case calling for a law of a *general nature* within the meaning of section 6, article I of the State Constitution; that it does not come within any of the exceptions provided for in section 30, article III of the State Constitution, and is not a case where *a general law could be made applicable* within the meaning of said constitutional provisions; and that there is no provision of the State or Federal Constitution inhibiting the action of the legislature in passing the legalizing act in question.

 There remains but one other question presented by the assignment of errors. It is contended by the appellant that the act invades vested rights of the plaintiff. The record in the case shows that the plaintiff, Iowa Electric Light & Power Company, has been ousted by decree of this court from the town of Grand Junction, and that it is not now occupying the streets and public places of the town or distributing any electricity within the corporate limits of said town, and it, therefore, has no vested rights in the judgment of this court within the meaning of the Constitution. The record shows that it purchased a lot within the town for the purpose, as shown by the testimony, of retaining the fruits of the victory in the original case. There is no evidence that plaintiff paid any taxes into the treasury of the town. Furthermore, the plant is to be paid for solely out of the future earnings of the plant, and in no event can the taxpayer be called upon to pay any taxes because of the operation of the said plant or on account of the contract entered into for the construction of said plant. See Wyatt v. Town of Manning, 217 Iowa 929, 250 N. W. 141; Greaves v. City of Villisca, 217 Iowa, 590, 251 N. W. 766.

The only vestige of right which the plaintiff has to raise the constitutionality of the statute in question is on the theory that, as a taxpayer, its action is brought in a representative capacity, on behalf of the town, and it is a doubtful question, under the holding of the case of Scott County v. Johnson, 209 Iowa 213, 222 N. W. 378, wherein we said that a ''litigant, to

challenge the constitutionality of a statute, must establish in himself a vested right which it is alleged the statute infringes.''

However, we have resolved the doubt in favor of the plaintiff and hold that it has brought itself within the rule in its representative capacity, and that the constitutional questions are properly raised by it.

For the reasons above set forth, it follows that the judgment of the lower court should be, and it is hereby, affirmed.—Affirmed.

DONEGAN, RICHARDS, and POWERS, JJ., concur.

PARSONS, J., specially concurs.

ALBERT, J., takes no part.

KINTZINGER, C. J., and ANDERSON and MITCHELL, JJ., dissent.

PARSONS, J. (concurring)—This is written as a special concurrence with the opinion filed in this case.

At the outset, the facts of this case show that the plaintiff-appellant is, as its name implies, a light and power company; that it at one time purchased of the then holder the right to operate a light plant in the town of Grand Junction; that its franchise expired by its very terms, and the plaintiff held on and operated its plant in the town for years thereafter. That for some reason or other the town desired to make a change, and attempted to enter into the contract in question herein, with Fairbanks Morse & Co. Thereupon, the plaintiff-appellant brought an action in 1932 to enjoin the town carrying out such a contract, and declared it void, and commenced such action alleging it was engaged in generating electric light and power and in the distribution thereof to its consumers and patrons in the town of Grand Junction. A cross-petition filed by the town in the case asked that the claimed right of the company to operate in the town be enjoined, as its franchise had expired. In the decree in this case, this court, in 216 Iowa 1301, 250 N. W. 136, enjoined the town from proceeding under the contract, but found for the town on its cross-petition and ordered the plaintiff ousted from the town, and gave it four months in which to remove its system from the streets, alleys, and public places of the town of Grand Junction.

Following this the plaintiff, by its vice president, consulted its attorney as to what to do in regard to the ouster order, and its attorney said, "It looks to me it is going to be inevitable that you must remove your distribution system from the town of Grand Junction." He further said, "you could own some property," and, when asked what would he suggest, he said, "If you expect to avail yourselves of the fruits of your victory you will have to be a taxpayer in the town," and that was what a lot was bought for, so it could continue to be a taxpayer. The purchase of this lot was on the advice of the attorney, so the lot was purchased simply, solely, and only in order that the plaintiff might remain a taxpayer; that it might still have power to bedevil the town. In other words it was putting itself in the position to say in effect, "You won't let us longer furnish electricity to you, we will do everything we can to see nobody else does." It was acting as many public service corporations act, the part of the "dog in the manger" who would neither eat the hay nor allow the horse to eat it. This court cannot afford to sanction such actions. It cannot afford, unless compelled by law, to hold that, in view of these facts, the plaintiff has any right to further continue this litigation. This court in Richman v. Board of Supervisors of Muscatine County, 70 Iowa 627, 26 N. W. 24 and 77 Iowa 513, 42 N. W. 422, 4 L. R. A. 445, 14 Am. St. Rep. 308, had litigation over the assessment for a levee, and in the 70th Iowa case had held the proceedings by which the levee was established was illegal, and in the 77th Iowa opinion held otherwise, after a legalizing act under the same circumstances practically that exist in this case. We cannot afford to go on record as laying down a different rule in this case in favor of public service corporations than that which was laid down as against the farmers of Muscatine Island in the Richman case. We think that case alone is decisive of this case, and will discuss it later.

In the decision in this case as reported in 216 Iowa 1301, on page 1304, 250 N. W. 136, 137, this court said:

"If the contract entered into with Fairbanks Morse & Company did not call for a construction of the plant in substantial compliance with the 'Town's specifications' there was no competitive bidding. It was simply a new proposition, and if they were materially different from the town's specifications there

would be no competitive bidding, and a contract based thereon would be invalid.'' It said further on in the opinion, page 1308:

"The evidence shows that Fairbanks Morse & Company failed to bid upon the town's specifications altogether, and other bidders had no opportunity to and did not bid upon Fairbanks Morse & Company's specifications, because no bids had been invited thereon. It is our conclusion that Fairbanks Morse & Company's specifications varied so materially from the town's specifications that there was no competitive bidding. The contract was therefore invalid, and plaintiff's application for an injunction should have been sustained.''

The effect of these holdings of the court was to declare the contract with Fairbanks Morse & Company invalid for the reasons set forth therein; i. e., that there was no competitive bidding. It has been decided many times that what the legislature can authorize it can legalize. The legislature had power to authorize the town to enter into a contract for the building of a light plant without competitive bidding. It could authorize, if it desired, the town to call for bids to furnish plans, specifications, price, etc, for doing the work, and terms of payment, leaving to the town council to select whichever it might see fit. This being true, the legislature can legalize it so upon the decision of this case, after the opinion in the 216th Iowa had been rendered and had gone into final decree, the legislature passed the act legalizing the proceedings. It is contended that section 30, article III of the Constitution, forbids the passage of such an act; second, that after the court has passed upon a matter of this kind and it has been entered in the final decree, the legislature cannot interfere by passing a legalizing act. Each of these contentions is contrary to the law as laid down in the books.

The right of the legislature to pass special acts is not determined by the grant of power so to do. That is not the way you construe state constitutions. The state legislature has all the power of legislation belonging to the old Parliament of England, except as it is forbidden either by the constitution of the United States, or by the constitution of the state. In construing the federal constitution we look to see if there is a grant of power for Congress to legislate. In construing a state constitution we look to see if there is anything forbidding the legislature to act in the premises. Section 30 of article III of the State Constitu-

tion recognizes the right of the legislature to enact special laws, except in certain instances, and sets them forth. It also contains the provision that in all other cases where a general law can be made applicable all laws shall be general and of uniform operation throughout the state. It is under this clause that the contention is made herein, that the legislature in passing the legalizing act violated the constitution. The opinion of the district court, we think, was a complete analysis of the fallacy of the contention, and, further, the writer thinks there is no question that Richman v. Board of Supervisors of Muscatine County, 77 Iowa 513, 42 N. W. 422, 4 L. R. A. 445, 14 Am. St. Rep. 308, controls this action. In that case the supervisors of Muscatine and Louisa counties undertook to build a levee on Muscatine Island, situated partly in one county and partly in another. The boards did not take the proper jurisdictional steps to establish the levee, but proceeded to build it, and then undertook to levy taxes to pay for it. The levying of these taxes was enjoined. In the case in the 70 Iowa 627, 26 N. W. 24, of the same title as the 77th Iowa case, the plaintiffs were identical. After the decision in the 70th Iowa case, enjoining the levying of taxes, the legislature passed a legalizing act, just as here. It was assailed as it is here; it was held that this act was not obnoxious to section 30 of article III, as being a local or special and not a general law. The court in its opinion in the third subdivision of the opinion says:

"The curative act is assailed as being obnoxious to section 30, art. 3, of the constitution, in that it is a local or special law. We regard this as the most doubtful question involved in the entire consideration of the case." It then quotes the provision of the Constitution. Following that, the opinion says: "It cannot be questioned that the curative act is both local and special in its application. Its whole tenor and bearing are to that end. It is in aid of a particular and a local enterprise. It can only be sustained upon the theory that a general law cannot be made applicable." It then says: "Counsel for appellants in argument, ingeniously, by way of illustration, attempt to show that a general law would reach the object. If the mere wording of the law, without regard to legislative purpose, is to be the guide for constitutional interpretation, we have no doubt that it could be effected. But was such the intention of the framers of the

constitution? To so hold is to place ourselves in harmony with the often repeated attempts at legislative evasion, when confronted by constitutional law, which we have no desire to do." It further says: "By the curative act it was not only the purpose to provide for the assessment and payment for the improvement, but the validity of the location was questioned; and a principal purpose of the act was to legalize that, and constitute it a public improvement. Its accomplishment under general legislation would be very difficult, if not impossible. The line or route of the levee did not conform to the original plan as a whole, and an effort to legalize it by general legislation would have involved a minuteness of description inconsistent with any other like state of facts, and we may here dispose of the question on the theory, at least, that the act is not so clearly obnoxious to constitutional requirements as to justify an interference by us.".

The writer of this opinion thinks the reasoning of the court in this part of the opinion is conclusive, first, that the act in question here is not obnoxious to section 30, article III; second, that even a law passed apparently applicable generally to meet the end would be local and special as in the Richman case, and in this case; and just as the court says, "If the mere wording of the law, without regard to legislative purpose, is to be the guide for constitutional interpretation, we have no doubt that it could be effected."

In the 70th Iowa case the court enjoined the levying of taxes for work that had already been done. In the 77th Iowa case it approved an act legalizing that which had been declared invalid by a decree of this court years before. It held that the farmers of Muscatine Island must pay the taxes for the levee.

The general rule is that where either a special or a general act can be made applicable, the determination of the legislature is conclusive. It is a legislative question into which the courts cannot inquire. 25 R. C. L. 824, discusses this clause, and says:

"The authorities are not entirely in accord as to who shall determine in any particular case whether a general law can be made applicable." It then says: "Probably no authority will deny that the legislature has a sound discretion to decide the question. In other words, the constitution leaves a discretion with the legislature to determine the case in which a special law is necessary"—citing in a note, 93 Am. St. Rep. 107. It then

says: "There is a line of decisions comprehending apparently the weight of authority which does not stop here, but holds that the legislature is the sole and exclusive judge in determining when a general law will not subserve the purpose as well as a special or local act and that its conclusion that a special or local statute should be enacted is final and conclusive, and not subject to judicial review. As sometimes expressed, the constitutional prohibition is really not prohibitory, but rather cautionary, to the legislature." And it says further: "The courts of some jurisdictions, however, refuse to concede the finality of the legislative determination in its broad and comprehensive sense, though holding that they are not justified in disturbing a special act of the legislature except where the case is clearly one for a general law"—citing in support of this, among other cases, Richman v. Board of Supervisors, 77 Iowa 513, 42 N. W. 422, 4 L. R. A. 445, 14 Am. St. Rep. 308; Cooley on Constitutional Limitations, Vol. I, p. 260, which cites State v. Hitchcock, 1 Kan. 178, 81 Am. Dec. 503, in which it was held that the constitutional provision, that "in all cases where a general law can be made applicable, no special law shall be enacted", left a discretion with the legislature to determine the cases in which special laws should be passed, and calls attention to a long list of cases so holding.

59 C. J. page 725, under the head of "Statutes," section 313, says:

"Many of the state constitutions provide that no special law may be enacted where a general law can be made applicable. As is elsewhere noted, except where expressly made a judicial question by provision of the constitution the determination of whether a general law may be made applicable is, by the weight of authority, regarded as a legislative question with which the courts will not interfere. Under this view it has been observed that the constitutional provision is in reality not prohibitory but is rather cautionary to the legislature." Examine City of Clinton v. Cedar Rapids & M. R. R. Co., 24 Iowa 455.

Lewis-Sutherland Statutory Construction, Vol. 1, 338, section 190 (117 Original Ed.), lays down this rule as to special and general legislation:

"Whether a particular act is conformable or not is a judi-

cial question; that is, the courts have power to determine it, and they will hold any act void which violates either of these regulations, with one exception. This exception is the question whether on a nonenumerated subject, not of a general nature, a general law can be made applicable. It is a conclusive implication, and that judgment is final; the courts will not enter at all upon the inquiry; they will accept the judgment as final; they will accept the judgment of the legislature as exercised within its exclusive legislative domain and give it effect.'' The note cites 35 cases from the following states: Indiana, Missouri, Colorado, Alabama, Arkansas, California, Illinois, Pennsylvania, Kansas, North Dakota, Oklahoma; besides a case from the Supreme Court of the United States, and three cases from the Circuit Court of Appeals of the United States. These are all states having similar Constitutions to ours. The state of Missouri in its earlier decisions so held, but the new Constitution was adopted about 1875, expressly making it a judicial question. On account of another provision in its Constitution, South Carolina held it to be a judicial question. I think Iowa should be added to this list of cases in Richman v. Board of Supervisors, 77 Iowa 513, 42 N. W. 422, 4 L. R. A. 445, 14 Am. St. Rep. 308. The writer thinks that in view of these authorities, and in view of what this court did in the Richman case, that whether or not the act in question was subject to review of the courts, has been decided, and leaves the determination of that question a legislative question with which the courts have no right to interfere.

The fact that this court decided as it did in this case, declaring that for failure to submit separate bids the contract between the town and Fairbanks Morse & Company was illegal, is not prohibitive of an act of the legislature to legalize the contract with the town, for it could have provided in the first instance the town could enter into such a contract, without competitive bidding. Having the power so to do, it can legalize the contract entered into without such bidding, and that the decision of the court only makes the necessity of the passing of such an act.

It was held in Richman v. Board of Supervisors, that because of the decision of this court in the 70th Iowa case of the same title, declaring the proceedings invalid, that the legislature had the right to do as it did. This case had been decided years

before in this court, and the legislature legalized the acts which were declared invalid in the first decision of the Richman case, and so it has the power to legalize these acts here. There is no claim that if this were a litigation between private parties alone that the legislature could legalize the contract, or could change the effect of the judgment; but in a case where public rights are involved the rule is to the contrary.

So we find the general rule is as stated, that in constitutions similar to ours, a legalizing act, special in its nature, is not affected by the clause as to legislation being general. The legislature itself determines this question, and that is final.

It was early decided in this state in Miners' Bank of Dubuque v. United States, 1 G. Greene, 553, that where the legislature reserves to itself the right to act under certain circumstances, the right to act is to be determined by it. As a corollary to this, where the constitution gives to the legislature the right to act under certain circumstances the same rule would obtain.

It is suggested in this case that section 6 of article I, being the Bill of Rights of the Constitution of this state, reading as follows:

"All laws of a general nature shall have a uniform operation; the General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens," forbids the act in question.

It is a very far-fetched argument that tries to bring this general clause from the Bill of Rights into this case as forbidding the act of the legislature attacked here, i. e., the legalizing act. To begin with, this act is not of a general nature; it is only laws of a general nature that shall have uniform operation. The act under question is not a grant to any citizen or class of citizens of privileges or immunities which upon the same terms shall equally belong to all citizens. It is news to the writer that a municipal corporation is a citizen within the meaning of our constitution. A constitution should be construed as a whole, just like a statute. The right of the legislature to pass local and special laws, except in certain cases, is recognized in section 30 of article III of the Constitution of the state of Iowa; so that an act passed by the legislature in conformity with the right recognized in section 30, is not a general act. If it is a general act, then it is not a special act. Its distinction is pointed out

strongly and clearly in the Richman case. To hold in this case that section 6 of article I has anything to do with it is to hold that the legislature of the state of Iowa cannot pass a legalizing act. The writer has examined a volume of the acts of the General Assembly, taking at random the Fortieth. In that we find over forty local or special acts legalizing something. Of these, fourteen were legalizing proceedings in county governments mostly dealing with financial matters, such as validating bond issues, etc.; there were fourteen legalizing acts of city council ordinances, resolutions and other provisions; eight were concerned with school districts; and four with drainage districts; while three were of private corporations. In each case of the public bodies, each had the power to do the things legalized, but something along the line that generated doubts as to the legality of the thing done, omitting the thing not done which generated the doubts. The power to legalize exists in the legislature, and that which the legislature can authorize it can legalize. The legislature could have authorized the entering into the contract, as it was entered into by the town of Grand Junction and Fairbanks Morse & Company. So it could legalize the acts done by the various corporations dealt with in the legalizing acts of the Fortieth General Assembly. Each general assembly of the state has passed acts of this character since the adoption of the Constitution in 1857. It is safe to say that these run to nearly 2,000; each act authorizing the omission of something which the legislature might have dispensed with in the act sought to be legalized. Is this court at the behest of the plaintiff herein, who had overstayed its legal stay in the town by over ten years, and who spitefully, because it could not stay longer, holds on as a taxpayer of the town by buying a lot, in order to keep on its bedeviling and continue its dog in the manger policy, going to approve such actions and upset practically every legalizing act that has been passed in the state of Iowa? To hold that section 6 of article I had anything to do with this question would be to open up a field of litigation to invalidate hundreds, yes, thousands of legalizing acts which have been passed by the legislature under the undoubted power it has to pass them. The legislature being expressly allowed by section 30 of article III to pass such acts, and, such acts being special and local, can possibly in no way be governed by section 6 of article I.

This government is divided into three great departments;

Executive, Legislative, and the Judicial. It seems to be a trait of human nature that when a person or body of persons are put in power, say, like Legislatures, courts, executives, each seems to desire to be the whole thing, and to have an idea that the whole government rests upon its shoulders; so the rights of these three departments must be considered. The constitution might have placed the entire thing in the hands of the Supreme Court; but it did not. It placed certain power in the Legislature; it placed certain power in the Court; it placed certain power in the Executive; and it is usurpation by the court to deny either of the other branches of the government the power the constitution places in each department.

The lower court in its opinion filed in this case cited the following cases to support the view of the court: Chicago, R. I. & P. R. Co. v. Rosenbaum, 212 Iowa 227, 231 N. W. 646; Iowa Railroad Land Co. v. Soper, 39 Iowa 112; Richman v. Supervisors, 77 Iowa 513, 42 N. W. 422, 4 L. R. A. 445, 14 Am. St. Rep. 308; State ex rel. v. Squires, 26 Iowa 340; Peverill v. Board of Supervisors, 201 Iowa 1050, 205 N. W. 543; McSurely v. McGrew, 140 Iowa 163, 118 N. W. 415, 132 Am. St. Rep. 248; Windsor v. City of Des Moines, Iowa, 101 Iowa 343, 70 N. W. 214; Ferguson v. Williams, 58 Iowa 717, 718, 13 N. W. 49; Chicago, R. I. & P. R. Co. v. Streepy, 211 Iowa 1334, 236 N. W. 24; Mote v. Incorporated Town of Carlisle, 211 Iowa 392, 233 N. W. 695. The court further said it was its opinion that where a city or town council enters into a contract, which it has authority and power to enter into, but under the law, on account of some informality in the proceedings leading up to the contract, the same is invalid, that such omission to observe the requirements laid down by the legislature may be cured by a legalizing act. It is not a question of lack of power on the part of Grand Junction because the town had the power to make the contract, but it neglected to require something that the legislature could well have not required in its original enactment.

The district court said in its opinion: ''Whether the plaintiff has any standing in court as an interested party, is a question of grave doubt.'' I agree with that court. Plaintiff started this action as the owner of the electric system in Grand Junction, and as a taxpayer. The court kicked the plaintiff out of town, and held it had no franchise; no right to occupy the streets of the town. It was only a taxpayer as an electric com-

pany. It purchased a lot solely and only for the purpose of remaining a taxpayer, without any interest whatever other than the lot purchased, and for the sole purpose of continuing its annoyance to the town. I think this alone calls upon this court to tell the plaintiff it is no longer in position to carry on this litigation, and is not entitled to any relief here, and that the appeal should be dismissed.

The fact that this court held illegal the contract originally entered into is no bar to the legislature curing the defects by a legalizing act, for the question here is a public question. Wilcox v. Miner, 201 Iowa 476, 205 N. W. 847, 848. In the cited case, the opinion was by Stevens, long-time and honored judge of this court. A decree was entered in the district court of Adams county, April 18, 1924, permanently enjoining appellee, who was treasurer of Adams county, from collecting certain taxes purporting to have been levied under the authority of chapter 48, Acts of the Fortieth General Assembly, relating to the eradication of bovine tuberculosis, and canceling the lien of said taxes. A portion of the tax having been paid, the court retained jurisdiction to make further orders respecting the disposition thereof. No appeal was taken from this judgment. On April 23, 1924, a curative act, known as chapter 24, Acts of the Extra Session of the Fortieth General Assembly, attempting to cure prior defects in the statute and to legalize the prior levy of taxes thereunder, and directing the treasurer to collect and distribute the same in accordance with the statute as legalized, became effective. A motion was filed by the appellee to modify the decree, so as to permit the carrying out of the provisions of the curative act. A motion was made to strike this motion from the files, as it was a mere attempt to relitigate the matters involved and already disposed of by final decree, and that the court was without jurisdiction to entertain the motion or to modify the decree. This motion was overruled, and the appellants filed answer setting up merely that the decree was final, and that all matters involved in the action were fully adjudicated thereby, and that the court was without jurisdiction to hear the said motion or to modify or vacate the decree or any part thereof. In commenting on this case the court said: "It is also equally well settled that the legislature may validate that which has previously been declared invalid in a judicial proceeding, particularly where a public right is involved"—citing Hodges v. Sny-

der, 45 S. D. 149, 186 N. W. 867, 25 A. L. R. 1128; Hodges v. Snyder, 261 U. S. 600, 43 S. Ct. 435, 67 L. Ed. 819; State of Pennsylvania v. Wheeling & Belmont Bridge Co., 18 How. (59 U. S.) 421, 15 L. Ed. 435; Utter v. Franklin, 172 U. S. 416, 19 S. Ct. 183, 43 L. Ed. 498; Donley v. City of Pittsburgh, 147 Pa. 348, 23 A. 394, 30 Am. St. Rep. 738; Blount v. City of Janesville, 31 Wis. 648; Nottage v. City of Portland, 35 Or. 539, 58 P. 883, 76 Am. St. Rep. 513; Richman v. Supervisors of Muscatine County, 77 Iowa 513, 42 N. W. 422, 4 L. R. A. 445, 14 Am. St. Rep. 308; City of Emporia v. Bates, 16 Kan. 495, 496; Hall v. Street Commissioners, 177 Mass. 434, 59 N. E. 68; Lewis County v. Gordon, 20 Wash. 80, 54 P. 779; Skagit County v. McLean, 20 Wash. 92, 54 P. 781; State v. Henry, 28 Wash. 38, 68 P. 368; State v. Newark & N. Y. R. Co., 34 N. J. Law, 301; Howell v. City of Buffalo, 37 N. Y. 267; Mills v. Charleton, 29 Wis. 400, 9 Am. Rep. 578; Marion County v. Louisville & N. R. Co., 91 Ky. 388, 15 S. W. 1061.

It will be noticed that the court cites in the opinion in the Wilcox case, Richman v. Supervisors of Muscatine County, 77 Iowa 513, 42 N. W. 422, 4 L. R. A. 445, 14 Am. St. Rep. 308, and holding as has been pointed out in this opinion. Further commenting, the opinion in the Wilcox case says:

"Appellee does not in argument claim that the court has power to vacate or modify a decree in equity adjudicating vested private rights, after the term at which it was entered, in a proceeding such as we are considering. We shall, therefore, assume, without discussion or decision, for the purposes of this appeal, that the contention of appellants on this point is sound. This does not, however, necessarily dispose of the case. In the absence of some attack on the validity of the statute, we will treat it as in all respects valid and enforcible. The validity of the curative act being assumed, the modification allowed, which practically dissolved the injunction, had the effect only of conforming the decree to the statute, which permitted the levy and collection of the taxes notwithstanding the decree previously entered."

Hodges v. Snyder, 45 S. D. 149, 186 N. W. 867, 25 A. L. R. 1128, has a note beginning on page 1136 speaking of the validity of curative acts impairing judgments and rendering them ineffective. There is conflict in these, and the rule on them, but an examination of this note, recent as it is, shows that there are a

large number of very respectable courts lined up in cases like this, and that the final judgment is not a bar to a legalizing act. The states so holding are Arkansas, Iowa, Kansas, Kentucky, Massachusetts, Minnesota, Nebraska, Oregon, Pennsylvania, Washington, and Wisconsin. The minority view is illustrated by cases from Illinois, Indiana; Maryland, Ohio, and Virginia.

While the validity of the curative act here is attacked, we think we have shown that the curative act was within the power of the legislature; that its determination to use this instead of a general act is finally binding on the courts, and that therefore the opinion in the Wilcox case is decisive of this case. We think we are supported in this case by the reasoning in the opinion of Chicago, R. I. & P. R. Co. v. Rosenbaum, 212 Iowa 227, 231 N. W. 646; also by Mote v. Town of Carlisle, 211 Iowa 392, 233 N. W. 695. The only ground held not good was because it contained a clause "nothing in this act shall affect any pending litigation." Acts 43rd G. A., ch. 378. The court held that that was a self-nullification because the case at the time was pending in the courts.

In Chicago, R. I. & P. R. Co. v. Streepy, 211 Iowa 1334, 1341, 236 N. W. 24, 27, this court, in an opinion by Justice Grimm, held that a legislative act which legalizes a tax levy after the appellate court has ruled (but before entry of judgment) that the taxpayer is entitled to a refund of the tax paid, because the tax levy was void, owing to the absence of an authorizing statute, neither disturbs any vested interest of the taxpayer's nor constitutes an unconstitutional interference with the judiciary. The opinion says:

"The legalizing act in this case was passed after a reversing ruling by this court, but before any judgment was entered in the lower court in harmony with said ruling. We do not regard it necessary to enter into a discussion of the question whether this fact has any material bearing on the question at issue on this appeal. The parties are here dealing with public, not private, rights. In other words, the right involved is one between the power of a taxing board, acting for and on behalf of the public, and the plaintiff railway company, a taxpayer. In Richman v. Supervisors of Muscatine County, 77 Iowa 513, 42 N. W. 422, 4 L. R. A. 445, 14 Am. St. Rep. 308, proceedings were instituted by the boards of supervisors of Muscatine and

Louisa counties for levying taxes for improvements on Muscatine Island. This court held the taxes levied by the board of supervisors to pay for the same to be void. The legislature then passed a legalizing act, and the case came back to test the legality of the legalizing act.'' Then follows a discussion of this act. The opinion says: ''We are not called upon to determine what might have been the result, had a final judgment been entered in favor of the appellants prior to the enactment of the curative act, but on this question see Hodges v. Snyder, 261 U. S. 600, 43 S. Ct. 435, 67 L. Ed. 819; Rafferty v. Smith, B. & Co., 257 U. S. 226, 232, 42 S. Ct. 71, 66 L. Ed. 208, 210; United States v. Heinszen & Co., 206 U. S. 370, 27 S. Ct. 742, 51 L. Ed. 1098, 11 Ann. Cas. 688; Richman v. Supervisors of Muscatine County, 77 Iowa 513, 42 N. W. 422, 4 L. R. A. 445, 14 Am. St. Rep. 308; Chicago, R. I. & P. R. Co. v. Rosenbaum, 212 Iowa 227, 231 N. W. 646.'' The opinion says further: ''It cannot be said, as claimed by the appellants, that there has been any interference with the powers of the judiciary of this state by a co-ordinate branch of the state government, the legislature. In harmony with the decision of this and other states and the federal courts upon facts such as appear in this cause, it was within the power of the legislature to enact the legalizing act in question, and thereby legalize retroactively the original taxes involved in this case.''

While it is the belief of the writer of this that the opinion of the lower court in this case should be affirmed, there is a great deal to be said as to another disposition of the case, and that is the dismissal of the appeal, on the ground that when the plaintiff lost in this court the right to maintain its system in the town, and confessedly bought a lot that it might remain a taxpayer in order to further litigate and annoy the town, it should not be allowed to appeal. If the plaintiff were a taxpayer outside of its system, what was the sense of it buying a lot in the town? It could only have been to continue its spite litigation, and under these circumstances it would be very proper for the court to order a dismissal of the appeal. This would not preclude any other taxpayer from litigating any right he has. The plaintiff did not bring its suit except in an individual capacity; made no pretense to being a class suit in an averment it was brought on behalf of plaintiff and all others in like situation.

So, I think the order in this court would be proper, either affirming the case, or in dismissing the appeal.

ANDERSON, J. (dissenting)—I am unable to concur in the majority opinion in this case, and I am unwilling that the rules announced and the conclusion reached by the majority become a part of the case law of this state, at least, without my protest. I feel that the announcement of the majority is not only against the great weight of authority in this as well as other states, but is against the public policy of this state as declared by the constitution and the prior decisions of this court. I am so thoroughly convinced of this that I am willing to hazard the prediction that the judgment of the majority which gives momentary currency to what I deem erroneous pronouncements and conclusions will some day be reversed. I am impelled to the belief that constitutional provisions and past pronouncements of this court cannot be ignored if the law in its administration is to win obedience and respect of the bench and bar as well as of the public generally.

In the following discussion I desire to give my reasons and make my position plain for the foregoing statement.

Section 30 of article III of the State Constitution provides that the General Assembly shall not pass local or special laws in certain enumerated cases, among which is ''for the incorporation of cities and towns'' and ''in all cases above enumerated, *and in all other cases* where a general law can be made applicable, *all laws shall be general,* and of uniform operation throughout the State.''

Section 6, article I, provides that ''All laws of a general nature shall have a uniform operation; the General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens.''

We have held that the legislature has plenary power, subject only to constitutional limitations or prohibitions; that its power is not a delegated one, but it may exercise all power not forbidden by the constitution, or delegatetd by the people to the general government, or prohibited by the constitution of the United States; and that municipalities owe their origin to, and derive their power and rights from, the legislature. Clinton v. Cedar Rapids & M. R. R. Co., 24 Iowa 455; McSurely v. McGrew, 140 Iowa 163, 118 N. W. 415, 132 Am. St. Rep. 248.

It may also be conceded that it is the established law that if

the thing done or which failed to be done which constitutes defects in municipal proceedings is something the necessity for which the legislature might have dispensed with by prior enactment, then it is not beyond the power of the legislature to dispense with it by subsequent enactment, *within constitutional limitations*. So, if the defect or irregularity consists of doing some act in a mode or manner which the legislature might have made immaterial by prior law, it is equally competent to have made the same immaterial by a subsequent law, within the same constitutional limitations. Appellant does not controvert this proposition, but contends that a legislative act must be of uniform operation; that is, that it must have more than a local or special application, under the constitutional limitations.

It cannot be reasonably doubted that the so-called legalizing act in question applies only to the town of Grand Junction, and that it is an attempt to except or release the town of Grand Junction from the operation of a mandatory statute which remains in full force as to all other municipalities in the state; and it most certainly must be conceded that the legislature could not have done this at the time it enacted the sections of the statute herein referred to requiring competitive bidding on contracts of the kind here involved. There can be no argument on the proposition that the act in question grants to Grand Junction alone freedom from the necessity of following the provisions of sections 6134-d1 to 6134-d7, inclusive, and in granting to Fairbanks, Morse & Company the right to contract with said town, ignoring the provisions of the statutes referred to, while denying such right to all others. It would have been rank preferment and patent violation of constitutional limitations had the legislature, at the time it enacted the sections of the statute requiring competitive bidding, excepted from the provisions of such sections the town of Grand Junction and Fairbanks, Morse & Company and no one would attempt to contend that such exemptions and preferment written into the provisions of the mandatory statute could be sustained. That the legislature may by a curative or legalizing act do what they could have done in the first instance there can be no question. But the thought persists that what they could not have done in the first instance could not be done at a later time.

This court held at an early date in the case of Ex parte Samuel Pritz, 9 Iowa 30, that a legislative act extending to one

town powers not given others of the same class is a prohibited special and local law. This case involved an amendment to the charter of the city of Davenport. In the Davenport case in considering section 30, art. III, of the constitution, and determining the intention when such article was adopted, the court used the following language:

"The ready and obvious answer is, to prevent special or local legislation; to require that the legislature should pass general laws upon all the subjects named and in all other cases, where such general law could be made applicable. There can be no question but that it was designed to confine the legislature to general legislation, and leave the people in their municipal capacity to organize and carry on their government under such general laws. * * * To say that the legislature may not pass a law to incorporate a city, but may to amend an act of incorporation in existence before the adoption of the constitution, or charters formed under the general law, would make this provision of the constitution practically amount to nothing. * * * It certainly will not be pretended that the power is given to amend that which they are prohibited from passing. To say that the legislature may not pass certain laws, and yet claim that they are not prohibited from amending the laws they cannot pass, would be to use an argument, the statement of which is its own refutation. * * * And finally, we suggest the query, whether, if this species of legislation may be tolerated, then may not the legislature grant to the citizens of one city or town, privileges and immunities, which, upon the same terms, do not belong to all the citizens of other cities or towns. If so, then is not such legislation prohibited by section 6, Art. I of the constitution."

The above-cited case simply lays down the rule that the legislature cannot do in a later instance what it had no power to do in the first instance. The act here involved is in effect an amendment to the original statute, but applying to no municipality in the state, except Grand Junction.

Another early case, that of Ind. School District v. City of Burlington, 60 Iowa 500, 15 N. W. 295, 297, considers a special act of the legislature attempting to legalize the imposition of certain taxes for the construction of a sewer, and Judge Rothrock, in disposing of the question as to the legality of the curative act, used the following language:

"It is insisted that this act of the legislature is repugnant to that part of section 30, art. 3, of the constitution of this state, which provides that the general assembly shall not pass local or special laws where a general law can be made applicable. We think the position is well taken. Suppose that the act of 1878 had provided that the exception therein contained should not apply to the city of Burlington. There can be no question that the act would have been unconstitutional, because not general and uniform in its operation. Now this legalizing act is an attempt to do indirectly what cannot be done directly. The act of 1878 conferred no power upon cities that had commenced a general system of sewerage, by the levy and collection of taxes, to change the mode of assessment and levy. Burlington belonged to that class; but, notwithstanding the want of power, it passed an ordinance and attempted to proceed under the law of 1878. The legislature had no more constitutional power to legalize the ordinance than it would to specifically authorize it in the first instance, and at the same time deny the same right or power to other cities similarly situated. The objection to the legalizing act is not going to the mere form of executing a power conferred, such as the want of sufficient notice required to be given for the incorporation of a village, or town, or school-district, or the like; or a mere informality in the assessment or levy of a tax. The act purports to legalize an act of the city, which it had no lawful power to do; not in mere matter of form, but an act which must necessarily affect the rights of property owners in the city in a manner which, without the curative act, was wholly unauthorized."

The legalizing act was held invalid. So in the instant case the special act of the legislature purports to legalize an act of Grand Junction which Grand Junction had no lawful power to perform; that is, enter into a contract for the installation and construction of a municipal light and power plant without competitive bidding.

We find a like holding in the case of Stange v. Dubuque, 62 Iowa 303, 17 N. W. 518. In this case the legislature attempted to legalize an ordinance of the city granting to a street railway company authority to occupy its streets. In disposing of the question as to the constitutionality of the legalizing act, Chief Justice Day said:

474

"The defendant concedes that no express power is given to the city of Dubuque by its charter to authorize the occupancy of its streets by railroads operated by steam. The appellant contends that the 'power of the legislature to ratify a contract entered into by a municipal corporation for a public purpose, which is ultra vires, results from its power to have originally authorized the very contract to be made.' This proposition we concede to be correct. Could the legislature, then, have passed an act authorizing the city of Dubuque to pass the ordinance in question? Article 3, section 30, of the constitution provides: 'The general assembly shall not pass local or special laws in the following cases. * * * All laws shall be general and of uniform operation throughout the state.' It has been held that this section of the constitution prohibits the passage of a special law for the amendment of the charter of a city. [Cited cases.] As the legislature could not, by special act, have authorized the city of Dubuque to pass the ordinance in question, it follows that it cannot, after the passage of the ordinance, legalize it by a special act. *The legislature cannot do indirectly what it is inhibited from doing directly.*"

The plain definite announcement of the three above-cited cases was reaffirmed and approved in an opinion of this court by Judge Weaver in the case of Cedar Rapids Water Co. v. Cedar Rapids, 118 Iowa 234, 242, 91 N. W. 1081, 1084. The question there involved was whether or not the legislature could legalize the granting of a franchise or extend its life beyond the twenty-five years provided by the statute. And in disposing of the question the court used the following language: "Does the legalizing act of March, 1876, serve to prolong the life of plaintiff's franchise beyond the term of twenty-five years? In our judgment, this question must be answered in the negative. If the legislature, in enacting section 473 of the Code of 1873, had added thereto a proviso as follows, 'Provided, that the limitations herein made upon the powers of cities and towns shall not apply to the city of Cedar Rapids,' we think no lawyer would contend that under our constitution such legislation would be of any validity. Const. Iowa, art. I, section 6; Id. art. III, section 30. But the effect of the legalizing act under consideration, in so far as it is applicable to the grant of franchise beyond the limit of twenty-five years, is no more or less than an attempt to except or release

the city of Cedar Rapids from the operation of a general statute which remains in full force against all other municipalities of the state, and thus accomplish by the device of a legalizing act that which the legislature could not do by direct enactment. This, we have already held, cannot be done. [Citing cases.] It will not do to say, as urged by counsel, that, if the legislature has not the power to grant a franchise by a special act, it cannot grant such power to a city, and that the legislature may by special act 'grant to a particular corporation a particular franchise for a particular city without being subject to any constitutional inhibition.' To accept that proposition is to open the door to the very evil which the constitutional provisions above cited were intended to avoid. The constitution seems to have been framed with special reference to the preservation of merely local interests from legislative interference, except through the medium of general laws having a uniform operation throughout the state. * * * The power of the legislature is, of course, practically unlimited, even in local matters, in the absence of constitutional restriction; and the prohibition of local or special legislation in no manner prevents that body from clothing cities and towns, through general statutes, with authority to do those things which are forbidden to itself. In other words, the constitution does not operate to forbid all local regulations and ordinances suitable to the peculiar circumstances of particular towns and cities, but it does forbid the exercise of this function by direct, special act of the legislature. Such we think the plain meaning of the constitutional provisions in question, and such, also, we think has been their universal interpretation by the courts.''

The above-cited cases have never been distinguished or overruled. The case of McCain v. Des Moines, 128 Iowa 331, 333, 103 N. W. 979, 980, attempts to distinguish the Cedar Rapids case; that is, it is said in the opinion in the McCain case that the legalizing act in the Cedar Rapids case ''was held invalid because it did not have general application. In that case a general law could have been made applicable, and therefore the act under consideration there was held invalid.'' The McCain case involved a tax question only.

In the last case of Johnson County Bank v. Creston, 212 Iowa 929, 932, 231 N. W. 705, 707, 237 N. W. 507, 84 A. L. R. 926, we find this language: ''The contracts in controversy were

entered into without submission to competitive bidding. The statute is peremptory that 'all contracts for the construction or repair of street improvements and for sewers shall be let in the name of the city to the lowest bidder by sealed proposals upon giving' prescribed notice. The statute is a prohibition upon letting such contracts in any other mode. Des Moines v. Gilchrist, 67 Iowa 210, 25 N. W. 136; District Township v. Dubuque, 7 Iowa 262, 276; Coggeshall v. Des Moines, 78 Iowa 235, 41 N. W. 617, 42 N. W. 650; Ebert v. Short, 199 Iowa 147, 152, 201 N. W. 793. * * * Municipal corporations are the creatures of the legislature. They have such powers to contract, and only such powers, as the legislature grants to them. When the legislature withholds power to contract, or permits the exercise of the power in a given case only in accordance with imposed restrictions, the corporation may no more bind itself by implied contract than by the forbidden express contract. All persons dealing with a municipal corporation are charged with notice of the limitations upon its power. Those limitations may not be exceeded, defeated, evaded, or nullified under guise of implying a contract. A municipal contract let without competitive bidding, when the statute requires competitive bidding, is void, and no recovery may be had either upon the purported express contract or upon an implied contract to pay the reasonable value of the services or material furnished thereunder." (Citing many cases from this and other jurisdictions.)

If the contract with Grand Junction was void, as this court had held in the prior case, then the legislature is without constitutional power to legalize such void contract and in practical effect create an entirely new contract. There are many cases in other jurisdictions sustaining the rule laid down in the Cedar Rapids Water Works case and the three preceding cases in this state. For instance, Illinois, in McDaniel v. Correll, 19 Ill. 226, 68 Am. Dec. 587, made this declaration:

"If it was competent for the legislature to make a void proceeding valid, then it has been done in this case. Upon this question we cannot for a moment doubt or hesitate. They can no more impart a binding efficacy to a void proceeding than they can take one man's property from him and give it to another. Indeed, to do the one is to accomplish the other." Also, see Columbus, C. & I. C. R. Co. v. Board of Com'rs, 65 Ind. 427;

Plumer v. Board of Sup'rs, 46 Wis. 163, 50 N. W. 416; Seibert v. Linton, 5 W. Va. 57; Leonard v. Maintenance District, 187 Ark. 599, 61 S. W. (2d) 70; State v. City of Des Moines, 96 Iowa 521, 65 N. W. 818, 31 L. R. A. 186, 59 Am. St. Rep. 381.

In Hunter v. Conner, 152 Tenn. 258, 277 S. W. 71, 72, the court said:

"A local act, which suspends general law for benefit of particular county, is void, and cannot operate to destroy the uniformity of the general law."

In Shores v. Banks County, 162 Ga. 185, 132 S. E. 753, 754, it was said:

"The act of 1924 is a special law; it applies to a restricted territory. It undertakes to authorize the county commissioners of two counties to open and lay out a public highway through a municipality without complying with the general law above stated. It is a special law enacted in a case for which 'provision has been made for an existing general law.' The act is void. Since the special law under which the county authorities are endeavoring to proceed is unconstitutional, the court erred in refusing an injunction."

In the Indiana Constitution (article 4, sections 22, 23) we find provisions very similar to our own as contained in section 30 of article III. And in passing on a curative act the court of Indiana used the following language:

"In cases where it would have been originally competent for the general assembly to have authorized particular proceedings upon the part of a board or other official, the same source of power may ordinarily validate the proceedings; but unless the general assembly had the power to have authorized the proceedings originally by an act that, in substance, would have been of the same character as the curative act, then the curative act would be invalid." And the court further held that: "It cannot, however, be contended with any show of reason that it would have been competent to have limited said act so as to exclude from its operation proceedings to improve highways in Owen county, thereby legislating for Owen County in such particular." And the court held that the curative act could not validate void proceedings. Board of Com'rs of Owen county v. Spangler, 159

Ind. 575, 65 N. E. 743, 746; Walsh v. State, 142 Ind. 357, 41 N. E. 65, 33 L. R. A. 392; Schneck v. City of Jeffersonville, 152 Ind. 204, 52 N. E. 212.

In Berry v. Hayes, 160 Tenn. 577, 28 S. W. (2d) 50, a special act of the legislature provided that the commissioners of a certain county should not have the right or power to impose taxation or expenses upon the county without the consent of the county; and the court in disposing of the constitutionality of the act used the following language:

"It is clear that this act is within the prohibition of section 8, art. 11, in that it suspends a general law and grants immunities and exemptions to Williamson county which no other county may enjoy. It is arbitrary class legislation for which no possible justification can be conceived. There is no reasonable ground for granting an immunity.to Williamson county which does not apply to every other county alike."

In the South Carolina case of Lancaster v. Brookland, 160 S. C. 150, 158 S. E. 233, 235, the court had under consideration a legalizing act ratifying and confirming an election for the extension of the limits for the town. The South Carolina Constitution contains provisions very similar to our own as to the enactment of general and special laws and as to uniformity in the application of laws. In that case an election was held without complying with a requirement as to the filing of a petition signed by a certain number of freeholders within the territory to be annexed to the town. And in passing upon the question as to the validity of the legalizing enactment that court held:

"Could the General Assembly by special Act have authorized the town of Brookland to hold this election without complying with the precedent requirement of the presentation of a petition signed by a majority of the freeholders of the territory proposed to be annexed? * * * This general law, which, it is declared, shall be uniform and is intended to apply to every city and town in the state, in effect says to Lexington and Batesburg and Saluda and others, 'You can only extend the corporate limits of your town by complying with the provisions of Section 4385 of the Code; you must have a petition signed by the majority of the freeholders of the territory you propose to annex before you may order an election.' But it is argued that the Legislature may

say to Brookland, 'You are relieved from the necessity of complying with the requirements of the Statute; you need not have a petition signed by the majority of the freeholders.' The position is untenable. Such an act, if passed before the election, would be the rankest sort of special legislation. The fact that it was passed after the election was held, and that it seeks to cure admitted irregularities growing out of violations of the statute, can make no difference. 'The General Assembly can validate any act which it might originally have passed.' * * * but it is plain that it might not originally have passed an act of the nature of that now under review, without infringing the provisions of the Constitution against the enactment of special laws. 'The pivotal point in a healing or validating statute is that it must be confined to acts which the Legislature could previously have authorized.'" Citing Dove v. Kirkland, 92 S. C. 313, 75 S. E. 503; Floyd v. Calvert, 114 S. C. 116, 103 S. E. 82; Tisdale v. Scarborough, 99 S. C. 377, 83 S. E. 594.

In Chicago, R. I. & P. R. Co. v. Rosenbaum, 212 Iowa 227, 231 N. W. 646; Peverill v. Board of Sup'rs, 201 Iowa 1050, 205 N. W. 543, and Chicago, R. I. & P. R. Co. v. Streepy, 211 Iowa 1334, 236 N. W. 24, cited and relied upon by the appellees, it appears that general acts of the legislature only were involved. In many of the other cases cited and relied upon by the appellees, mere informalities in executing and conferring power were involved, such as defective notice for the incorporation of a town, or school district, or the like, or an informality in the assessment or levy of a tax. Ind. School District v. Burlington, 60 Iowa 500, 15 N. W. 295. But none of the cases relied upon by the appellees give to them any substantial support. Most of them arose under a failure to strictly comply with permissive, directory, or discretionary statutes. In the case at bar we have a plain, definite, mandatory statutory provision requiring competitive bidding in the letting of a contract of the kind here involved. And we have in the curative act an attempt to release the town of Grand Junction from the provisions of this mandatory statute, while leaving it in full force and effect as to all other cities and towns in the state.

The instant case is not the only one in which there has been such a violation of the provisions of this mandatory statute. This court had the same statute under consideration in the very

recent case of Iowa-Nebraska Light & Power Co. v. Villisca et al., 220 Iowa 238, 261 N. W. 423. And in that case we held a contract, like the one here involved, entered into between the town of Villisca and Fairbanks, Morse & Co., void for failure to comply with the mandatory statute referred to. So, too, a like question was presented to us in the more recent case of Northwestern Light & Power Co. v. Grundy Center et al., 220 Iowa 108, 261 N. W. 604, in which case a contract made between Fairbanks, Morse & Company, and the town, like the one in the instant case, was held void by reason of a failure to comply with the mandatory requirements of the statute on competitive bidding. In view of the record in the instant case, we may anticipate further legislative curative acts releasing the towns of Villisca and Grundy Center from the requirement that this class of contracts must be let on competitive bidding, while still leaving the general statute in force as to all other cities. I do not think that any particular town or towns or any particular contractor should be relieved by the legislature from compliance with the statutes referred to. Such legislative acts not only contravene constitutional limitations and provisions, but should be held to be against the public policy of this state, as declared by the legislature in the statute requiring competitive bidding for municipal contracts of the class here involved. As has been declared, the object and purpose of the statute requiring competitive bidding is "to enable municipal corporations to secure the best bargain for the least money", Iowa-Nebraska Light & Power Co. v. Villisca, supra, and to prevent fraud and the making of contracts for excessive amounts, thereby imposing extra burdens on the taxpayers. But it is said the taxpayers cannot be interested, and in fact it is claimed a taxpayer has no such interest as will permit him to bring an action questioning the legality of the contract here involved, for the reason that under the contract the consideration must be paid exclusively from the earnings of the plant. But in this connection it must be remembered that when paid for this utility plant will belong to the town of Grand Junction, and after that period the earnings will go into the funds of the town and thereby relieve the property owners therein from some of their tax burdens.

The appellant attacks the validity of the so-called curative or legalizing act on the ground that it is an interference with the authority of the judicial branch of the state government; this

court having held the contract void prior to the enactment of the act. This contention has merit and is sustained by numerous decisions of our sister states. However, I will not extend this dissent to discuss this proposition.

I would hold that the legislature cannot under the provisions of the constitution accomplish by a curative or legalizing act what it could not have done at the time of the passage of the original statutes involved. This is what it attempted to do in the act under consideration, and no questions of expediency can warrant the passage or approval of an act of the kind.

The legalizing act in this case is clearly contrary to the provisions of our constitution. The constitution should not be regarded as a public enemy and knocked down every time it is met. Neither should it be restricted and ignored by repeated acts of attrition. If a statute is clearly contrary to constitutional provisions, it is the duty of the court to declare it so. No other tribunal can be appealed to. It matters not how laudable the purpose of the statute may be, if it violates the constitution, the duty of the court is clear. The statute under consideration in this case has no laudable purpose. On the contrary, it was enacted to enable the Fairbanks, Morse Company and the town of Grand Junction to evade the public policy and the laws of this state. There is no effort to relieve towns other than Grand Junction from the necessity of competitive bidding in awarding public contracts. There is no change in the policy of the state in any manner providing that it is a desirable means of preventing fraud. It amounts simply to a declaration by the legislature that the usual consequence of violating a law shall be dispensed with in the case of this one town and this one contractor, the Fairbanks, Morse Company.

As was said in McDaniel v. Correll, 19 Ill. 226, 68 Am. Dec. 587, ''If it was competent for the legislature to make a void proceeding valid, then it has been done in this case. Upon this question we cannot for a moment doubt or hesitate. They can no more impart a binding efficacy to a void proceeding, than they can take one man's property from him and give it to another. Indeed, to do the one is to accomplish the other.''

If the curative act in this case be held valid, as it is by the majority opinion, then there is no reason why an act legalizing any kind of a contract could not be held valid after it had been

declared void by the supreme court. When the contract here involved was declared null and void by the prior opinion of this court, there existed no contract. It was completely dead. It had no vitality or force. Now by the majority opinion life is restored to it, and I would hold that this could not be accomplished even by the united efforts or acts of all three branches of the state government.

I would reverse the action of the trial court in holding the curative act under consideration valid and constitutional.

MITCHELL, J., joins in this dissent.

KINTZINGER, C. J., also joins in this dissent.